COMMONWEALTH vs. PAUL R. CAMPBELL, JR.

Middlesex. March 6, 1978. — May 23, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Criminal*, Directed verdict. *Homicide. Malice. Evidence*, Photograph, Expert Opinion.

Evidence at a murder trial, together with the reasonable inferences which could be drawn therefrom, was sufficient to warrant a finding that the defendant acted with malice aforethought in killing the victim. [311-313]

The judge at a murder trial did not abuse his discretion in admitting in evidence a photograph of the deceased after surgery for a knife wound. [313-314]

At the trial of an indictment for murder by stabbing, the defendant was not prejudiced by expert testimony that the deceased's injuries resulted from a "forceful, purposeful thrust" of a knife where the witness subsequently clarified the use of the word "purposeful." [314-315]

INDICTMENTS found and returned in the Superior Court on August 8, 1973.

The cases were tried before *Good*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Michael J. Monahan* for the defendant.

*James W. Sahakian*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J.   On an indictment charging murder in the first degree Paul R. Campbell, Jr. was convicted by a jury of the murder in the second degree of his roommate, James Duffey. Campbell was also convicted of possession of a dangerous weapon (knife) and assault by means of a dangerous weapon (knife) on William Biciocchi, another roommate. In this appeal pursuant to G. L. c. 278, §§ 33A-33G, Campbell challenges only his conviction of murder in the

second degree[1] and argues assignments of error concerning (1) the denial of his motion for a directed verdict of not guilty of murder in the second degree; (2) the admission of a photograph of the deceased after surgery; and (3) the failure of the judge to strike a word from the testimony of the government's expert witness. We concluded that the conviction should be affirmed.

We summarize first the evidence presented by the Commonwealth. Campbell, Duffey (the victim of the homicide), William Biciocchi (the victim of the assault by means of a dangerous weapon), and one Brenda Loveless had been part of the "same crowd" for approximately six years. In 1973, Campbell, Duffey, and Biciocchi shared an apartment in Cambridge. Brenda Loveless and the defendant started dating in February of 1969. They broke off and then resumed their relationship a number of times; at one time they had been engaged to be married.

In 1971, during one of the periods in which Brenda and the defendant were not seeing each other, Brenda started dating Duffey. About six weeks prior to the homicide, she spent one night with Duffey at the apartment. After the defendant learned of this, he told a friend that he was very upset that Brenda and Duffey were seeing each other and stated that he would not do such a thing to a friend.

Shortly before the homicide the defendant and Brenda again resumed their relationship. On the night of the killing, they went to a lounge where they had a few drinks.[2] Later, when the defendant was driving Brenda home[3] and away from his apartment, Brenda asked to leave the car and walk. She got out of the car and started to walk. The defendant turned the car around and stopped near Brenda who was, at that time, opposite the apartment.

---

[1] Assignments of error not briefed are deemed waived. *Stranad* v. *Commonwealth*, 366 Mass. 847, 848 (1974). *Commonwealth* v. *Kleciak*, 350 Mass. 679, 681 (1966).

[2] Brenda testified that, although the defendant had had some drinks, he was not drunk.

[3] Brenda apparently lived in Arlington at this time.

Brenda and Campbell began arguing loudly and heatedly about Brenda's feelings for the defendant and their relationship. A portion of the argument concerned Brenda's having stayed with Duffey. The defendant then forced Brenda to go into the living room of the apartment, where Duffey was asleep on the couch. Brenda and Campbell continued their quarrel, thereby partially awakening Duffey.

Before Duffey awakened, the defendant went to his own room and took a switchblade knife from a dresser drawer. On his return, Campbell found Duffey awake. Duffey moved to leave the room, but the defendant pushed him back. The defendant then repeatedly ordered Brenda and Duffey to have sexual intercourse in front of him. Brenda was hysterical and screaming. Duffey repeatedly asked, "What's going on?" The defendant continued to yell.

At this point, Biciocchi entered the room. The defendant pointed the knife at him and said, "Get back. This is none of your business. Get out of here." Biciocchi told the defendant to put the knife down, and, when Campbell did not comply, Biciocchi left to call the police.

The defendant continued screaming at Brenda and Duffey and pointing the knife at them. Brenda, the only witness other than the defendant in the room when the stabbing which followed occurred, testified that she saw Duffey "bounce onto the couch, grab his chest, and slide to the floor." Brenda did not actually see the defendant stab Duffey.

Immediately thereafter the defendant went into the outside hall to get help from a nurse who lived in the apartment above. He also tried to summon help from a hospital and the police.

When the police arrived, the defendant told them that he had stabbed Duffey, but that it was an accident since Duffey had walked into the knife. He stated that he had had an argument with Duffey over a girl.

The next morning the defendant was interviewed by the Cambridge police. He repeated that he had argued with Duffey about Brenda. He stated that he had kicked Duffey

onto the couch while holding the open knife in his hand. He said that Duffey had bounced back up from the couch and "walked into the knife."

Duffey died a week later as a result of the knife wound. A pathologist testified that a "forceful" thrust, not a glancing thrust, would have been required to cause the wound which killed Duffey.

The defendant testified in his own behalf. The defendant's account of his relationship with Brenda, of his feelings about Brenda's staying with Duffey, and of the general events of the night of the killing was basically similar to the evidence presented by the Commonwealth. However, he stated that he never intended to hurt anyone with the knife; rather he only planned to use it to scare Brenda and Duffey. He also stated that after he kicked Duffey onto the couch, Duffey bounced toward him and was wounded.

1. *Motions for a Directed Verdict.*

At the close of the Commonwealth's case and again after the defense rested, the defendant moved for a directed verdict of not guilty on so much of the indictment as charged murder in the first and second degree. The motions were denied. In considering whether these denials were correct we review only the evidence introduced up to the time that the Commonwealth rested its case. *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976).[4]

The denial of the motions for a directed verdict raises the issue whether there was sufficient evidence to warrant submission of the charge of murder in the second degree to the jury.[5] See *Commonwealth* v. *Kelley, supra* at 150. *Com-*

---

[4] The Commonwealth's position as to proof did not deteriorate between the time the Commonwealth rested and the close of all the evidence. See *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 n.1 (1976). The defendant's testimony did not provide significant facts different from those already adduced by the Commonwealth. Although the defendant testified that the stabbing was accidental and that he only intended to scare Brenda and Duffey, the substance of this testimony had already been presented by the Commonwealth through defendant's statements to the police.

[5] Since the defendant was acquitted of murder in the first degree, he argues only the denial of his motions for a directed verdict as to murder in

*monwealth* v. *Caine,* 366 Mass. 366, 372-374 (1974). Murder is the unlawful killing of a human being with malice aforethought. *Commonwealth* v. *Caine, supra* at 373. Malice includes any intent to inflict injury without legal excuse or palliation. *Commonwealth* v. *Mangum,* 357 Mass. 76, 85 (1970). The defendant argues that the Commonwealth introduced insufficient evidence on the element of malice.

A defendant's intent may properly be proved by reasonable and possible inferences from the evidence. *Commonwealth* v. *Beckett,* 373 Mass. 329, 341 (1977). See *Commonwealth* v. *Amazeen, ante* 73, 80-81 (1978); *Commonwealth* v. *Sandler,* 368 Mass. 729, 741 (1975). See also *Commonwealth* v. *Earltop,* 372 Mass. 199, 200-201 (1977); *Commonwealth* v. *Gagne,* 367 Mass. 519, 526-527 (1975). The Commonwealth presented evidence concerning the defendant's relationship with Brenda, his feelings concerning Brenda's seeing Duffey, and his heated argument with Brenda and Duffey on the night of the killing. From this evidence, the jury could reasonably have inferred that the defendant intentionally killed Duffey because of hatred, jealousy, or a desire for revenge.

The existence of malice may also be inferred from the intentional use of a deadly weapon. *Commonwealth* v. *Greene,* 372 Mass. 517, 519 (1977). *Commonwealth* v. *Festa,* 369 Mass. 419, 424 (1976). *Commonwealth* v. *Gagne, supra* at 522. *Commonwealth* v. *Kendrick,* 351 Mass. 203, 209-210 (1966). From the facts that the defendant went to his room to obtain a switchblade knife and that Duffey was subsequently stabbed with the knife, the jury could have found that the defendant intentionally used a deadly weapon on the victim. From this finding the jury could have inferred the existence of malice.

The defendant argues, however, that because his statements to the police, and later his own testimony, demon-

the second degree. See *Commonwealth* v. *Amazeen, ante* 73, 81 n.6 (1978).

strate that he did not intend to kill Duffey, the circumstantial evidence of malice was insufficient and the inference of malice from the use of a deadly weapon was rebutted. We disagree. A jury is not required to believe any or all of a defendant's statements; rather, it may believe only such portions of the statements as it may consider trustworthy. *Commonwealth* v. *Amazeen, supra* at 80 n.5. *Commonwealth* v. *McInerney,* 373 Mass. 136, 141-144 (1977). *Commonwealth* v. *Goldenberg,* 315 Mass. 26, 30 (1943). Under either theory, general circumstantial evidence or inferred malice from the use of a deadly weapon, to the extent that a defendant's words and his conduct permit conflicting inferences, it is for the jury to determine where the truth lies. See *Commonwealth* v. *Amazeen, supra* at 80-81; *Commonwealth* v. *McInerney, supra* at 141-148; *Commonwealth* v. *Greene, supra* at 519-520; *Commonwealth* v. *Gagne, supra* at 522-524.

The judge was correct in determining that he could not rule as matter of law that the defendant lacked malice.

2. *Photograph of Deceased.*

During the course of the trial a photograph of the deceased was admitted showing one incision held together with black stitches extending down the chest beneath the nipple and a second penetration below the incision. The defendant argues that the admission of this picture constituted prejudicial error because the picture was inflammatory and because it was unnecessary to prove the Commonwealth's case since there had already been verbal testimony concerning the nature of the wound.

The admission of such photographs is within the discretion of the trial judge. See *Commonwealth* v. *Amazeen, supra* at 84. There was no abuse of discretion.

The fact that there had been previous testimony concerning the nature of the wound does not render the photograph lacking in probative value. *Commonwealth* v. *Bys,* 370 Mass. 350, 359-360 (1976), and cases cited. In the present case, the photograph aided the jury in understanding the nature of the wound (*Commonwealth* v. *Galvin,* 323 Mass.

205, 215 [1948]; *Commonwealth* v. *Retkovitz*, 222 Mass. 245, 248 [1915]), in considering the testimony of the pathologist (*Commonwealth* v. *Lee*, 324 Mass. 714, 718-719 [1949]), and in determining whether the wound had been inflicted intentionally or accidentally (see *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 817 [1973]).

The fact that the picture showed a surgical incision above the wound could not have misled the jury as to the injuries sustained since it was made quite clear that this incision was made in the course of medical treatment. See *Commonwealth* v. *Ellis*, 373 Mass. 1, 7 (1977). Moreover, the presence of the incision above the wound cannot be said to be so inflammatory as to require exclusion of the photograph. Cf. *Commonwealth* v. *Richmond*, 371 Mass. 563 (1976).

3. *Expert Testimony.*

During the direct examination of the forensic pathologist the following exchange took place:

ASSISTANT DISTRICT ATTORNEY: "Now, I'm asking you, Doctor, if you can tell us what degree of force is required to have penetrated that portion of the rib cage to the interior of the chest into the heart?"

THE WITNESS: "Well, this would take an appreciable degree of force. This wouldn't be a simple glancing thrust. It had to be a forceful, purposeful thrust to penetrate through the rib cage."

COUNSEL FOR THE DEFENDANT: "If the Court please."

THE WITNESS: "Through the rib cage."

COUNSEL FOR THE DEFENDANT: "The use of the word 'purposeful.'"

THE JUDGE: "'Purposeful.'"

COUNSEL FOR THE DEFENDANT: "May it be stricken?"

THE JUDGE: "Would that be a medical term? Or another —"

THE WITNESS: "Well, I tried to indicate in some language that this — that this is not just a holding of a knife, let's say, by two fingers; but you have to hold the knife, and — or a

weapon of this kind — and it has to make a forceful thrust to penetrate through the chest cavity."

THE JUDGE: "All right. Having defined the meaning of the word, the answer will stand."

COUNSEL FOR THE DEFENDANT: "Note my objection and exception please."

THE JUDGE: "Yes."

The defendant argues that it was prejudicial error to refuse to strike the reference to "purposeful" because such a conclusion was beyond the scope of the expert's competence. See *Commonwealth* v. *Montmeny*, 360 Mass. 526, 527-528 (1971); *Commonwealth* v. *Gardner*, 350 Mass. 664, 666-667 (1966); *Commonwealth* v. *Harrison*, 342 Mass. 279, 292-293 (1961); *Commonwealth* v. *Chapin*, 333 Mass. 610, 625, cert. denied, 352 U.S. 857 (1956).

If there was any error in the refusal to strike the word "purposeful," it was not prejudicial. By having the witness clarify the meaning of the term "purposeful," the judge, in substance, granted the defendant the same relief which could have been obtained by the allowance of the motion to strike. See *Commonwealth* v. *Lannon*, 364 Mass. 480, 484-485 (1974); *Commonwealth* v. *Early*, 349 Mass. 636 (1965). We also note that the judge instructed the jury that the testimony of the pathologist could be accepted or rejected by them in the same manner as that of other witnesses. See *Commonwealth* v. *Ellis*, 373 Mass. 1, 6 (1977); *Commonwealth* v. *Medina*, 372 Mass. 772, 781 (1977).

4. *G. L. c. 278, § 33E.*

Pursuant to our authority under G. L. c. 278, § 33E, we have reviewed the entire record and transcript. We conclude that neither a new trial nor a reduction in the verdict is warranted.

*Judgments affirmed.*