COMMONWEALTH *vs.* DANIEL L. LAPOINTE.

Bristol. February 1, 1988. — May 9, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Evidence*, Hearsay, Reputation, Burden of going forward, Flight, Consciousness of guilt, Credibility of witness. *Practice, Criminal,* Opening statement, Appeal, Instructions to jury, Argument by prosecutor, Conduct of prosecutor, Sentence. *Self-Defense.*

At a murder trial in which the defendant claimed he had acted in self-defense, the judge erred in permitting prosecution witnesses to testify over objection as to the victim's reputation in the community for peacefulness inasmuch as the issue of the victim's reputation had not been raised by the defense, and there was no evidence that the defendant knew of the victim's reputation; however, due to the overwhelming evidence in the record warranting the defendant's conviction of manslaughter, the error was not prejudicial. [324-326]

Where, although the issue of the defendant's post-traumatic stress disorder was discussed at his trial for murder, there was no ruling by the judge on this issue, nothing was brought to this court for review. [326-327]

Although, at a murder trial, the judge's unobjected-to instructions to the jury what to do should they "find that there was a right of self-defense," was error, there was no substantial risk of a miscarriage of justice where the judge, in further instructions, made it clear that the Commonwealth had the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. [327-328]

At a murder trial, the judge did not err in instructing the jury that the defendant had a duty to retreat before employing deadly force to defend himself against an assailant lawfully in the defendant's home. [328-329]

At a murder trial, any error in the judge's instructions to the jury concerning the use of excessive force in self-defense was nonprejudicial to the defendant, where the jury convicted him of the lesser offense of manslaughter. [329]

At a murder trial in which the jury convicted the defendant of manslaughter, the judge's instruction that evidence of consciousness of guilt was "admissible as evidence tending to prove guilt along with all other evidence" was sufficient to satisfy the requirement, articulated in *Commonwealth v. Toney*, 385 Mass. 575, 585 (1982), that the jury be instructed not to convict on evidence of flight or concealment alone; moreover, in light

of the substantial evidence before them, aside from evidence of consciousness of guilt, there was no danger that their verdict was based solely on the defendant's actions after the crime. [330]

The defendant at a criminal trial was not prejudiced by certain unobjected-to comments by the prosecutor in closing argument by which he allegedly vouched for a witness, urged the jury to draw improper inferences, suggested a union between jury and prosecution in the search for truth, and sought sympathy for the victim. [330-332]

A sentence of not less than fifteen and not more than eighteen years at the Massachusetts Correctional Institution, Cedar Junction, imposed upon a defendant convicted of manslaughter, was proper, where the sentence was within the applicable statutory provision and where the judge's comments at the time of sentencing did not indicate that the defendant was sentenced for a crime other than that for which he was convicted. [332]

INDICTMENT found and returned in the Superior Court Department on January 24, 1984.

The case was tried before *William H. Carey*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for the defendant.

*Dana A. Curhan*, Assistant District Attorney, for the Commonwealth.

LIACOS, J. The defendant, Daniel L. Lapointe, was indicted by a Bristol County grand jury for the murder in the first degree of Edward LeBlanc. Following a jury trial, the defendant was convicted of manslaughter and was sentenced to not less than fifteen years nor more than eighteen years at the Massachusetts Correctional Institution (MCI), Cedar Junction. On appeal, the defendant claims: the judge erred in permitting witnesses to testify as to the deceased's reputation for peacefulness; the judge erred in excluding evidence regarding the defendant's post-traumatic stress disorder; the judge erred in his instruction on consciousness of guilt and made several errors in instructions on self-defense; the prosecutor made improper comments during his closing argument; and the judge improperly sentenced the defendant. We transferred the case to this court on our own motion. We affirm.

The facts that the jury could have found on the evidence before them are as follows. On January 12, 1984, the defendant telephoned the home of his ex-wife, Susan, to inquire about the delivery of Christmas presents to their daughter, Jamie. Susan and Jamie were living with, and Susan was engaged to be married to, Edward LeBlanc. LeBlanc answered the telephone and spoke to the defendant. LeBlanc was "a little angry," "upset," and "sick of the situation"[1] when he left Susan to go to the defendant's house to talk with him.

The defendant was living with Linda Canuel and her daughter, Melissa, in the third-floor apartment of a three-family dwelling. Following his telephone conversation with LeBlanc, the defendant took a tranquilizer or "stomach" pill and lay down on the sofa. Canuel and the defendant anticipated that LeBlanc was coming to the house. Canuel was watching from a window for his arrival. She saw LeBlanc park his automobile about two houses away and heard some glass being broken.[2] Canuel heard LeBlanc come into the house and ascend the stairs. She told the defendant that LeBlanc was coming. He got his loaded Walther 380 automatic gun and placed it in the waistband of his pants. Canuel went with her daughter to the daughter's bedroom.

LeBlanc pounded on the front door of the defendant's apartment. Canuel left the bedroom and urged the defendant to open the door. Canuel never saw a gun. When the defendant unlocked the deadbolt and opened the door, an "enraged" LeBlanc rushed in, his arms in the air. LeBlanc said, "You die, - - -," and advanced on the defendant. Canuel fled into the bathroom. She heard shots fired. When she emerged from the bathroom, the defendant told her to call the police.

The police arrived at the apartment and found LeBlanc's body on the floor of the living room, covered by a blanket. A

[1] Following their divorce, the relationship between Susan and the defendant was described by her testimony as "disagreeable." They had frequent arguments over money and the defendant's visitation rights.

[2] The windshield of the defendant's automobile was smashed on the evening of the homicide.

knife was in LeBlanc's right hand. There were not signs of a struggle in the apartment. The defendant showed the officers a badge, said he was a constable, and had just shot the man on the floor. The defendant said that LeBlanc had come "charging in with the knife," and that he had shot him a few times and then shot "some more to make sure he was dead . . . because that's what they taught him in 'Nam."

The defendant told the police about the problems he had been having with his ex-wife and her boy friend, about the telephone call preceding LeBlanc's arrival, that he had been afraid of LeBlanc, and that, when LeBlanc burst into the apartment, the defendant "saw the flash of something shiny." When interrupted by the police and told that the police could determine whether the knife had been placed in LeBlanc's hand,[3] the defendant admitted putting the knife in LeBlanc's hand. The defendant also said that he was heavily medicated and was being treated at the Veteran's Administration Hospital for post-traumatic stress disorder (PTSD). The defendant indicated that, when Canuel told him that LeBlanc had parked his automobile, he had gotten his weapon. After LeBlanc came through the door, the defendant shot him, first in the arm and then in the chest.[4]

At trial, the defense was self-defense. The jury returned a verdict, finding the defendant guilty of manslaughter.

1. The defendant contends that the judge erred in permitting prosecution witnesses to testify over objection as to the victim's reputation in the community for peacefulness. The defendant asserts that the issue of the victim's reputation was not raised by the defense, and there was no evidence that the defendant knew of the victim's reputation. The Commonwealth counters that the defense opened the door to evidence of the victim's

---

[3] In later statements to the police the defendant also admitted that the knife was his.

[4] The results of the autopsy showed six bullet wounds: one to the right temporal region; one to the right ear; one to the right side of the neck; one to the right upper chest; one to the middle chest; and one to the back of the right arm above the elbow. Seven discharged cartridge casings were found at the scene of the homicide.

reputation during opening statements and during the cross-examination of the first of the prosecution's witnesses.

A defendant who claims he killed in self-defense may offer evidence of a victim's reputation as a violent and quarrelsome person. *Commonwealth* v. *Gibson*, 368 Mass. 518, 526 (1975), and cases cited therein. *Commonwealth* v. *Connolly*, 356 Mass. 617, 625-626, cert. denied, 400 U.S. 843 (1970). However, the evidence of the victim's reputation is relevant only if the defendant knew of the reputation at the time of the crime. *Commonwealth* v. *Tircinski*, 189 Mass. 257, 258 (1905). *Commonwealth* v. *Connolly, supra* at 626. P.J. Liacos, Massachusetts Evidence 415 (5th ed. 1981 & Supp. 1985).

Once the defense has opened the door as to the issue of the victim's character, the prosecution can, on rebuttal, introduce evidence of the victim's reputation in the community for peacefulness. 2 J. Wigmore, Evidence § 246 (Chadbourn rev. 1979). At the time the question regarding the victim's reputation for peacefulness was posed by the prosecutor on redirect, there was no evidence indicating that the defendant knew of the victim's reputation. Furthermore, before reputation for peacefulness is admissible, the defense must open the door by presenting *some evidence* of the victim's violent character. Opening statements by the defense attorney are not evidence, see *Commonwealth* v. *Hartford*, 346 Mass. 482, 486 (1963); *Commonwealth* v. *Fazio*, 375 Mass. 451, 454-455 (1978), and the questions posed during cross-examination by defense counsel[5] did not open the issue of the victim's character. Thus, the

---

[5] The Commonwealth claims that the following colloquy which took place during the defense counsel's cross-examination of the first prosecution witness opened the issue of the victim's character.

THE DEFENSE COUNSEL: "How long had [the victim] been taking karate lessons?"

THE WITNESS: "Before I met him and afterwards, after I knew him, I would say three years before I met him."

THE DEFENSE COUNSEL: "So, he had been taking karate lessons so far as you knew about ten years?"

THE WITNESS: "Yes."

THE DEFENSE COUNSEL: "Did he ever tell you his level of expertise

judge erred in allowing the testimony about the victim's repu-
tation for peacefulness. The error, however, was not prejudi-
cial. Our review of the record as a whole, omitting the repu-
tation testimony, indicates that the evidence to convict the
defendant of manslaughter was overwhelming.

2. The defendant argues that the judge erred in excluding
evidence that the defendant suffered from PTSD. Before trial,
the defendant filed a notice pursuant to Mass. R. Civ. P. 14,
as amended, 385 Mass. 1213 (1982), that the defendant would
"offer expert testimony that . . . at the time the first shot was
fired . . . and that from the moment the first shot was fired
the Defendant suffered . . . Post-Traumatic Stress Disorder,
chronic with intrusive recollections; that such evidence shall
be offered as it is relevant to the issue of post-homicide con-
sciousness of guilt, [reflexive] acts, and other actions of the
Defendant occurring subsequent to the shooting." During mo-
tion hearings in the absence of the jury, defense counsel argued
that the experts on PTSD would testify as to "why so many
shots may have been fired into the victim rather than just one
. . . . That the state of mind because of the stress disorder,
the multiple shots were reflexive acts rather than evidence of
deliberation and premeditation."

---

at karate?"
   THE WITNESS: "Yes."
   THE DEFENSE COUNSEL: "What was it?"
   THE WITNESS: "Well, when I met him, he had a black belt."
   THE DEFENSE COUNSEL: "What does that mean?"
   THE WITNESS: "That's — That means he's been studying it for a
long time and he was pretty good."
   THE DEFENSE COUNSEL: "You mean, you could be pretty destructive
when you have a black belt, is that what you mean?"
   THE WITNESS: "You could."

There is nothing in this colloquy that goes either to the reputation of the
victim in the community for turbulence and violence, or that relates to the
defendant's knowledge of the victim's reputation. See *Commonwealth* v.
*Edmonds*, 365 Mass. 496, 503-504 (1974) (character evidence is by evidence
of reputation in the community). See also *Commonwealth* v. *Sheline*, 391
Mass. 279, 288-289 (1984) (evidence of prior inconsistent statements not
attack on character trait of truthfulness).

The judge stated: "I *would be inclined* to exclude any evidence of this Vietnam syndrome except as it pertains to evidence of consciousness of guilt after the incident took place" (emphasis added). Later, the judge said: "Perhaps we can have a voir dire on your psychiatrist. . . . I would be *tending* to exclude [the psychiatrist's testimony as to PTSD] insofar as it pertains to the general issue of self-defense and number of bullets" (emphasis added). Still later, the judge stated: "I would be ruling that if it's admissible at all, it's admissible on the issue of consciousness of guilt." The prosecutor then requested a voir dire before the defendant's opening statement to "have the Court at that time make a judgment on whether or not the [PTSD] testimony is admissible and to what extent it's admissible." The Commonwealth also filed a motion in limine seeking to prevent the introduction of PTSD evidence. The following day, the judge asked defense counsel whether his PTSD experts would be available. Defense counsel informed the judge that he had not called them in and assured the judge that the subject would not come up during opening statements. No further action was taken by defense counsel, and the subject of PTSD was not pursued at trial.

Although the issue was discussed, the judge was never called upon to rule whether PTSD evidence would, or would not, be allowed. The judge made a number of preliminary statements as to what his ruling might be, but the issue was never presented directly by the defendant to the judge. No witnesses were brought to testify, no voir dire was held, and no offer of proof was made. Because there was no ruling by the judge on this issue, there is nothing for this court to review. See *Commonwealth* v. *Zion*, 359 Mass. 559, 564 (1971). Cf. *Commonwealth* v. *Mulica*, 401 Mass. 812 (1988).

3. The defendant takes issue with the self-defense instructions given in this case. Specifically, the defendant contends that the instructions shifted the burden of proof, erroneously defined the duty to retreat, and erroneously defined excessive force. The defendant did not make objections to the first two alleged errors in the instructions, and so we review them to determine whether the charge created a substantial risk of a mis-

carriage of justice. *Commonwealth* v. *Germain*, 396 Mass. 413, 419 (1985). *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). The defendant argues that the judge relieved the Commonwealth of its burden to prove the absence of self-defense. The defendant points to the portion of the instructions where the judge instructed the jury what to do should they "*find* that there was a right of self-defense" (emphasis added). It was error for the judge to so instruct. *Connolly* v. *Commonwealth*, 377 Mass. 527, 533-535 (1979). *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 690-691 (1976). However, looking at the instructions as a whole, we conclude that no risk of a miscarriage of justice has been demonstrated. See *Commonwealth* v. *Albert*, 391 Mass. 853, 858-859 (1984). The judge instructed the jury three times at the beginning of the self-defense instruction and twice after the instructions that the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense. Furthermore, the judge correctly instructed that, if the jury had "reasonable doubt whether or not the defendant acted in self-defense, the verdict is now not guilty." Like the instructions in *Rodriguez, supra,* and *Connolly, supra,* the judge made an unfortunate choice of words during an insignificant portion of the instructions, but, unlike those cases, the judge made it clear that the Commonwealth had the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense.

The defendant also raises, for the first time on appeal, the judge's instruction as to the duty, in self-defense cases, to retreat from an assailant lawfully in the defendant's home. The judge instructed the jury that the defendant had no obligation to retreat from a person unlawfully in the defendant's dwelling, but, if the person was lawfully on the premises, then the defendant had a duty to retreat. In response to a jury question during deliberations, the judge further instructed the jury: "The right to use deadly force by way of self-defense is not available to one threatened until he has availed himself of all reasonable and proper means in the circumstances to avoid combat. And this rule has equal application to one assaulted or threatened in his home by a lawful visitor." The defendant asserts that the

Legislature, in enacting G. L. c. 278, § 8A,[6] from which the judge drew the instructions on duty to retreat, intended to permit a person to respond to a life-threatening assault from a lawful visitor in one's home. The language of G. L. c. 278, § 8A, does not support the defendant's claim. Nothing in the statute eliminates the duty to retreat from a person *lawfully* on the premises. Additionally, the defense counsel indicated that he was content with this instruction. There was no error. The judge properly instructed the jury on the duty to retreat.

The defendant also takes issue with the instructions regarding the use of excessive force in self-defense. Without getting into the merits of the defendant's arguments, we note that the defendant was indicted for murder in the first degree but convicted of manslaughter. The importance of the instruction on the use of excessive force in self-defense is that the use of excessive force in self-defense warrants a conviction of manslaughter. *Commonwealth* v. *Burbank*, 388 Mass. 789, 795 (1983). *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211 (1966). Here, unlike the case in *Commonwealth* v. *Stokes*, 374 Mass. 583, 594 n.7 (1978), the judge explained excessive force adequately. Although the judge failed to refer to the "infirmity of human impulses and passions" (*Commonwealth* v. *Kendrick, supra,* quoting *Monize* v. *Begaso*, 190 Mass. 87, 89 [1906]), he used words which adequately conveyed this concept to the jury, as to the defendant's state of mind at the time of the encounter. There was no error.

---

[6] General Laws c. 278, § 8A (1986 ed.), provides: "In the prosecution of a person who is an occupant of a dwelling charged with killing or injuring one who was unlawfully in said dwelling, it shall be a defense that the occupant was in his dwelling at the time of the offense and that he acted in the reasonable belief that the person unlawfully in said dwelling was about to inflict great bodily injury or death upon said occupant or upon another person lawfully in said dwelling, and that said occupant used reasonable means to defend himself or such other person lawfully in said dwelling. There shall be no duty on said occupant to retreat from such person unlawfully in said dwelling."

4. For the first time on appeal, the defendant raises the issue of the propriety of the instructions on consciousness of guilt.[7] We review the issue to see if there exists a substantial risk of a miscarriage of justice. The defendant asserts that the instruction did not comply with the requirements for consciousness of guilt instructions set out in *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982): "We think that a judge should instruct the jury (1) that they are not to convict a defendant on the basis of evidence of flight or concealment alone (see, e.g., *Commonwealth* v. *Smith*, 368 Mass. 126, 129 [1975]), and (2) that they may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant. We do not think it necessary, as suggested by the defendant, that the judge bring to the attention of the jury the defendant's own innocent explanation for the alleged flight, although the judge may in his discretion do so. A general instruction of the type outlined above will suffice." The instructions given in this case satisfied the second prong of *Toney*, but, arguably, not the first. The Commonwealth, however, points out that the judge's instruction that evidence of consciousness of guilt was "admissible as evidence *tending* to prove guilt *along* with *all other evidence*" was sufficient to meet the *Toney* standard (emphasis added). *Commonwealth* v. *Nadworny*, 396 Mass. 342, 371 (1985), cert. denied, 477 U.S. 904 (1986). We agree. As stated in *Nadworny, supra*, "the instruction contained the substance of what we required in *Toney*." In light of the substantial evidence presented to the jury, aside from that evidence indicating consciousness of guilt, on which a manslaughter verdict could have been based, there was no danger that the jury based their verdict solely on the defendant's actions after the shooting.

5. We next consider the defendant's claims regarding prosecutorial misconduct. Although no objection was made at the time, the defendant now claims prejudice because the prosecutor, during closing argument, allegedly vouched for a witness,

---

[7] Neither the defense nor the Commonwealth requested that the instruction be given.

urged the jury to draw improper inferences, suggested a union between jury and prosecution in the search for truth, and sought sympathy for the victim. At the outset, we note that the judge properly instructed the jury that the arguments of counsel were not evidence but "simply attempts by two lawyers . . . to try to persuade [the jury] to certain conclusions on behalf of [the people] that they represent."

We see no error in the prosecutor's argument that it took "courage" and "character" for Shirley LePage to testify and that the witness had the prosecutor's respect. The prosecutor did not comment, from personal knowledge, on the credibilty of a witness. See *Commonwealth* v. *Olszewski*, 401 Mass. 749, 760 (1988). Similarly, we see no error in the prosecutor's comments about the defendant. When considered in context,[8] the prosecutor's statements do not impugn unfairly the defendant's credibility.

The prosecutor's statements which, according to the defendant, created improper sympathy for the victim, were all based on evidence properly admitted at trial. The victim was employed and about to be married to the woman carrying his child. The defendant was unemployed and taking many medications. In closing arguments, "[c]ounsel for each party is permitted and expected to marshal the evidence and to argue for a decision of the controversy in favor of his client. This process often involves pointing out not only the strength of his client's case, but also the weakness of that of his opponent." *Commonwealth* v. *Johnson*, 374 Mass. 453, 459 (1978). Nothing in the prosecutor's argument amounted to an improper appeal for sympathy.

The defendant's last claim of prosecutorial misconduct alleges that the prosecutor prejudicially provoked a highly emotional response from Susan when he showed her a photograph of the victim's body as it lay on the defendant's apartment floor.

---

[8] The prosecutor's comments as to the lies the defendant had told about the shooting and had admitted telling to the police were juxtaposed with comments that the defendant had made self-serving statements about his being a constable and serving in the military.

After Susan broke into tears, the judge, sua sponte, ordered a recess. Defense counsel moved for a mistrial which the judge denied. Before adjourning for the day, the judge instructed the jurors that they should not "be affected at all by emotional outburst, justified or not justified." The defendant contends that the judge abused his discretion in refusing to grant the motion for a mistrial.

Defense counsel conceded at trial that the photograph had probative value and could have been admitted through many other witnesses. The judge found that the outburst was one "which might have been expected or unexpected." The fact that the evidence was admissible and the witness's response was not found to be expected, combined with the immediate recess called by the judge and the strong curative instruction, evince no abuse of discretion and no prejudice to the defendant.

6. The final allegation of error by the defendant raises the issue of the sentence the defendant received. The defendant was sentenced to not less than fifteen and not more than eighteen years at MCI, Cedar Junction. The sentence imposed was within the applicable statutory provision. The judge's comments at the time of sentencing do not indicate that the defendant was sentenced for a crime other than the offense for which he was convicted. See *Commonwealth* v. *Franks*, 365 Mass. 74, 81 (1974). The judge stated that he was "not deviating at all from that verdict. I accept that verdict." The sentence imposed was proper.

*Judgment affirmed.*