COMMONWEALTH *vs.* JAMES COLANTONIO.

Nos. 89-P-364 & 90-P-1265.

Suffolk. May 9, 1991. - August 29, 1991.

Present: WARNER, C.J., GILLERMAN, & IRELAND, JJ.

*Practice, Criminal,* New trial, Instructions to jury, Assistance of counsel. *Constitutional Law,* Self-incrimination, Assistance of counsel. *Witness,* Self-incrimination. *Self-Defense. Defense of Others. Evidence,* Consciousness of guilt, Flight. *Homicide. Malice.*

In a murder case, the judge correctly denied the defendant's motion for a new trial on the basis that evidence the defendant alleged to be newly discovered had not been shown to be material, that is, it would not have been a factor in the jury's deliberations. [301-303]

In a murder case, the judge correctly denied the defendant's motion for a new trial on the basis that he had been deprived of his right to present a defense, his right to compulsory process, and his right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution because the Commonwealth had exercised improper influence over an accomplice's availability as a witness by agreeing to his guilty plea before the defendant's trial and to the postponement of sentencing until afterward, where the defendant failed to demonstrate that any action of the prosecutor influenced the accomplice's decision not to testify or that his testimony would have been material and exculpatory. [303-304]

In a murder case, the judge correctly denied the defendant's motion for a new trial on the basis that the defendant's trial counsel's failure to attempt to have an accomplice's statement to the police admitted in evidence constituted ineffective assistance, where counsel's decision not to attempt to introduce the statement was not a manifestly unreasonable trial tactic. [304]

At a murder trial, the judge did not err in permitting the defendant's accomplice to invoke his privilege against self-incrimination where, although the accomplice's testimony could not have exposed him to prosecution for manslaughter to which he had already pleaded guilty at the time he refused to testify for the defense, testimony concerning the crime could have exposed him to prosecution for a related crime, such as conspiracy. [304-306]

At a murder trial, the judge's unobjected-to instructions to the jury, alleged to have improperly shifted to the defendant the burden of proof on the issue of self-defense or defense of another, created no substantial risk of a miscarriage of justice where, although containing some disap-

proved language, the-instructions as a whole conveyed to the jury that the burden remained with the Commonwealth throughout to prove beyond a reasonable doubt that the defendant did not act in self-defense or defense of another. [306-310]

At a murder trial, the judge adequately instructed the jury concerning the proper consideration of evidence of consciousness of guilt. [310-311]

There was sufficient evidence of malice presented at a criminal trial to support the defendant's conviction of second degree murder. [311-312]

A criminal defendant made no showing that his trial counsel provided ineffective assistance in failing to request the judge to conduct an "adequate colloquy" regarding an accomplice's invocation of his right to remain silent under the Fifth Amendment to the Federal Constitution [312-313], in failing to move for a mistrial and a hearing concerning the Commonwealth's alleged exercise of undue influence over the accomplice to prevent him from testifying [313], in failing to object to errors in the jury instructions on self-defense and defense of another and consciousness of guilt [313], or in failing to file a motion for a required finding of not guilty [313-314]; moreover, this court rejected the defendant's argument that these alleged errors of law which, although individually insufficient to require reversal, cumulatively presented a substantial risk of a miscarriage of justice [314].

INDICTMENT found and returned in the Superior Court Department on October 20, 1986.

The case was tried before *Sandra L. Hamlin*, J., and a motion for a new trial was heard by her.

*Frank L. Bruno* for the defendant.

*Mark D. Zanini*, Assistant District Attorney, for the Commonwealth.

WARNER, C.J. During a confrontation near the Jeffries Point Yacht Club in East Boston, the defendant killed William Moran by striking him on the head with a baseball bat. He was indicted for first degree murder along with James All. At trial, the defendant testified that he struck Moran with the bat because he believed Moran was reaching for a knife during an altercation with All, the defendant's friend. The defendant tried to strike Moran on the shoulder, but Moran ducked, and the bat hit him on the side of the head. A Superior Court jury convicted the defendant of second degree murder. He appealed, and new counsel filed a motion for a new trial. The motion was denied after a hearing. This

is a consolidated appeal from the defendant's conviction and from the denial of his motion for a new trial.

## The New Trial Motion.

The defendant's motion was grounded on All's refusal, based on his privilege against self-incrimination under the Fifth Amendment to the United States Constitution, to testify for the defense at trial. All pleaded guilty to manslaughter on the first day of his and the defendant's trial. His plea was accepted, and his sentencing was postponed. The defendant claims that he is entitled to a new trial for three reasons. (1) All's potential testimony constitutes newly-discovered evidence because All, having been sentenced at the time of the new trial motion, could no longer invoke his privilege against self-incrimination to avoid testifying at a new trial. All's testimony, the defendant asserts, would bolster his unsuccessful claim that he acted in defense of another. (2) The Commonwealth exercised improper influence over All's availability as a witness by agreeing to his guilty plea before the defendant's trial and to the postponement of sentencing until afterward. (3) The defendant's trial counsel provided ineffective assistance by failing to introduce as evidence at trial a statement All had given to the police. The defendant's motion was accompanied by a supporting affidavit consisting of a statement by his new attorney asserting his belief that if All were to testify, his testimony would be favorable to the defendant.[1]

"A trial judge upon motion in writing may grant a new trial if it appears that justice may not have been done. Mass. R. Crim. P. 30 (b), 378 Mass. 900 [1979]. A motion for new

---

[1]The defendant failed to include in his appendix a copy of his new trial motion or the affidavit accompanying the motion. Our information as to their contents comes from the motion judge's thorough memorandum of decision. The defendant's claim that his trial counsel's failure to attempt to introduce in evidence All's statement to the police constitutes ineffective assistance appears in the defendant's brief, along with a number of other ineffective assistance claims. Since the motion judge's memorandum discusses this ineffective assistance claim, we consider the claim in the context of the defendant's appeal from the denial of his new trial motion. We consider the other ineffective assistance claims in the context of the direct appeal.

trial is addressed to the sound discretion of the judge, and the judge's disposition of the motion will not be reversed unless it is manifestly unjust, or unless the trial was infected with prejudicial constitutional error. Reversal for abuse of discretion is particularly rare where the judge acting on the motion was also the trial judge" (citations omitted). *Commonwealth* v. *Moore*, 408 Mass. 117, 125 (1990).[2]

To succeed in his claim that he is entitled to a new trial in order to present All's potential testimony, the defendant "must establish both that the evidence is newly discovered and that it casts real doubt on the justice of the conviction." *Commonwealth* v. *Grace*, 397 Mass. 303, 305 (1986). The motion judge correctly found that no showing had been made that All would provide material testimony.[3] The defendant's motion was not accompanied by an affidavit stating what All's testimony would be or whether he would be willing to testify. See *Commonwealth* v. *Tobin*, 392 Mass. 604, 618-619 (1984); *Commonwealth* v. *Buckley*, 6 Mass. App. Ct. 922, 923 (1978); *Commonwealth* v. *Crowe*, 21 Mass. App. Ct. 456, 487 (1986). In light of the defendant's failure to demonstrate that All's testimony "would probably have been a real factor in the jury's deliberations," *Commonwealth* v. *Grace, supra* at 306, the motion judge did not consider, and we need not, whether such testimony could properly be con-

---

[2]In this case, the judge acting on the motion was also the trial judge.

[3]The motion judge reviewed a statement All had given to the police during the investigation of the crime and concluded that if All were to testify to the contents of that statement, it would not "create[] a substantial risk that a jury exposed to such evidence would have reached a different conclusion." The statement contained some information corroborating the defendant's self-defense claim: "All told police . . . that 'the [victim] reached back' as if for a weapon and that '[the defendant] said "I thought [the victim] had a knife or something." ' " All's statement also contained inculpatory information: All "stated that he did not know what the [victim] was doing 'when he reached back there,' that he had 'no idea,' why [the defendant] hit the [victim] with a bat, that it 'bothered' him that he did not know why [the defendant] had hit the [victim], and that [the defendant] threatened another person at the scene with the bat."

sidered "newly discovered" under Mass.R.Crim.P. 30(b). See *Commonwealth* v. *Toney*, 385 Mass. 575, 580 (1982).[4]

The defendant claims that he was deprived of his right to present a defense, his right to compulsory process, and his right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution, because the Commonwealth improperly influenced All's availability as a witness.[5] To substantiate these claims, the defendant must show that the prosecution's actions caused a loss of material and favorable testimony. See *United States* v. *Valenzuela-Bernal*, 458 U.S. 858, 867-872 (1982); *United States* v. *Hoffman*, 832 F.2d 1299, 1303 (1st Cir. 1987); *Commonwealth* v. *Crawford*, 12 Mass. App. Ct. 776, 782-784 (1981); *Commonwealth* v. *Snook*, 28 Mass. App. Ct. 955, 957-959 (1990). Cf. *Commonwealth* v. *Pisa*, 372 Mass. 590, 593-597, cert. denied, 434 U.S. 869 (1977). The defendant has failed to demonstrate that any action of the prosecutor influenced All's decision not to testify. He has not shown that it was, in fact, the Commonwealth that moved for the postponement of All's sentencing.[6] The fact that the prosecutor stated that he might call All as a rebuttal witness, after All had earlier refused to testify for the defense, does not demonstrate that the Commonwealth wielded an improper influence over All. Fur-

---

[4]The motion judge determined that All would continue to have a valid Fifth Amendment privilege against self-incrimination even though his case had been concluded. On appeal, the defendant merely asserts that All can no longer invoke that privilege. Because he does not argue the issue, the defendant has waived it. Mass.R.A.P. 16 (a)(4), as amended, 367 Mass. 921 (1975). In any event, a determination of the issue would have no effect on the outcome of this appeal, since the defendant's failure to show the materiality of All's potential testimony is fatal to his claim.

[5]The defendant also asserts violation of his rights under art. 12 of the Declaration of Rights of the Massachusetts Constitution. He does not argue a State claim in his brief, however, and we therefore consider his claim under principles of Federal law.

[6]The defendant states in his brief that the docket entries in All's case reveal that the Commonwealth postponed All's sentencing on its own motion. To the contrary, the docket entries do not reveal the source of the motion to continue All's sentencing. Had the Commonwealth requested the postponement of All's sentencing, that fact alone would not, of course, demonstrate wrongdoing.

thermore, as we have said, the defendant has made no show-
ing that All's testimony would have been material and excul-
patory. The motion judge correctly found that the defendant
had not substantiated his claims in these respects.

Likewise, the judge correctly found that trial counsel's
failure to attempt to have All's statement to the police ad-
mitted in evidence did not constitute ineffective assistance.
See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974)
(the court must determine "whether there has been serious
incompetency, inefficiency, or inattention of counsel — be-
havior of counsel falling measurably below that which might
be expected from an ordinary fallible lawyer — and, if that
is found, then, typically, whether it has likely deprived the
defendant of an otherwise available, substantial ground of
defence"). The judge determined that "All's statement, al-
though somewhat supportive of Colantonio's claim of self-de-
fense, also contained information that was damaging to Co-
lantonio."[7] She further observed that All's statement would
have had limited corroborative value because All was the de-
fendant's friend and an alleged participant in the crime who
had pleaded guilty. As the judge concluded, the decision not
to attempt to introduce All's statement was not a "manifestly
unreasonable trial tactic."[8] See *Commonwealth* v. *Callahan*,
401 Mass. 627, 634-635 (1988). The judge properly exer-
cised her discretion in denying the defendant's motion for a
new trial.

### The Direct Appeal.

The defendant asserts numerous grounds of error.

1. *All's assertion of his Fifth Amendment privilege.* The
defendant contends that the trial judge erred in permitting
All to invoke his Fifth Amendment privilege against self-in-

---

[7]See note 3, *supra.*

[8]The motion judge did not reach the question whether the hearsay state-
ment would have been barred as evidence at trial. The defendant made no
argument to show that it would have been admissible under any exception
to the rule against hearsay. In his brief the defendant asserts that the
statement would have been admissible under "various" hearsay exceptions,
but offers no support for the assertion.

crimination, thereby violating the defendant's rights under the Federal and State Constitutions and a State statute.[9] At the time All refused to testify for the defense, he had been indicted for first degree murder and his guilty plea to manslaughter had been accepted by the judge. The trial judge ruled that All had a valid Fifth Amendment privilege. Defense counsel agreed. The defendant now argues that, because All's guilty plea to manslaughter had already been accepted, his testimony could not have incriminated him and that it was therefore error to permit him to invoke a Fifth Amendment privilege not to testify.

"We apply Federal standards to determine whether a claim of privilege is justified. Under those standards, a refusal to testify on Fifth Amendment grounds must be upheld unless it is ' "*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency" to incriminate.' The privilege 'not only extends to answers that would in themselves support a conviction .... but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant' " (emphasis in original, citations omitted). *Commonwealth* v. *Borans*, 388 Mass. 453, 456 (1983), quoting in part from *Hoffman* v. *United States*, 341 U.S. 479, 486, 488 (1951). A witness who may be "effectively immunized from further prosecution by his prior conviction[ ] . . . 'does not lose his Fifth Amendment right to refuse to testify concerning *other* matters or transactions not included in his conviction. Furthermore, neither a practical unlikelihood of prosecution nor the prosecutor's denial of an intention to prosecute negates an otherwise proper invocation of the Fifth Amendment' " (citations omitted). *Commonwealth* v. *Borans, supra* at 459. Moreover, we do not " 'balance' [a defendant's] rights under

---

[9]Specifically, the defendant claims deprivation of his right to present a defense, compulsory process, due process of law, and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as art. 12 of the Declaration of Rights of the Massachusetts Constitution and G. L. c. 263, § 5.

the Sixth Amendment against his witness's decision to invoke the Fifth Amendment. Rather, we examine the record only to determine the propriety of the witness's refusal to testify on Fifth Amendment grounds." *Commonwealth* v. *Francis*, 375 Mass. 211, 215, cert. denied, 439 U.S. 872 (1978).

Although All's testimony could not expose him to prosecution for the crime to which he had pleaded guilty, testimony concerning the episode could expose him to prosecution for a related crime, such as conspiracy. See *Commonwealth* v. *Francis, supra* at 215-216. As we have observed, whether, "as a practical matter," such a prosecution is "unlikely" has no bearing. *Id.* at 216. The judge was correct in allowing the claim of privilege "if there was even slender ground for apprehending that testimony on the part of [All] might tend to incriminate him." *Commonwealth* v. *LaBonte*, 25 Mass. App. Ct. 190, 196 (1987). The defendant has failed to demonstrate that "there is no real possibility that the witness's answer[s] will lead to disclosure[s] injurious to him." *Taylor* v. *Commonwealth*, 369 Mass. 183, 189 (1975). The judge's proper ruling certainly did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Keevan*, 400 Mass. 557, 561-562 (1987).

2. *The jury instructions.* (a) *Self-defense and defense of another.* The defendant alleges errors in the jury instructions on self-defense and defense of another. He did not object to these alleged errors at trial. We review the charge to determine whether it created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Lapointe*, 402 Mass. 321, 327-328 (1988). We judge the "legal sufficiency of the instructions to the jury . . . on the basis of the charge as a whole, and not on the basis of limited or isolated portions of it" (citations omitted). *Commonwealth* v. *Albert*, 391 Mass. 853, 857-858 (1984). "If the instructions as a whole convey to the jury a fundamentally correct appreciation of the law of self-defense and, in particular, of the allocation of the burden of proof, any flaws along the way will not necessitate a new trial." *Commonwealth* v. *Vidito*, 21 Mass. App. Ct. 332, 335 (1985), and cases cited.

The defendant claims that the judge improperly shifted to him the burden on the issue of self-defense or defense of another, violating his right to due process under standards established in *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), and *Sandstrom* v. *Montana*, 442 U.S. 510 (1979). "[T]he Commonwealth must bear the burden of proof that a defendant did not act in self-defense." *Commonwealth* v. *Albert, supra* at 857, and cases cited. The Commonwealth similarly bears the burden of proof that a defendant did not act in defense of another. See *Commonwealth* v. *Martin*, 369 Mass. 640, 650 (1976) ("[T]he trend . . . has been to interweave closely the justification of defense of a third person with self-defense"); Nolan & Henry, Criminal Law § 680 (2d ed. 1988) ("This justification [defense of others] appears to be coextensive with the right of self-defense"). "Because 'self-defense is a "sensitive part of jury instructions in a criminal trial, [an error in which] can readily lead to a miscarriage of justice," ' 'increased expectations appropriately arise as to trial counsel's efforts to preserve the defendant's appellate rights' " (citations omitted). *Commonwealth* v. *Vidito, supra* at 334-335. In this case, trial counsel twice requested, and received, reinstruction on defense of another. "The lack of [other] . . . objection[s] . . . suggests that the defendant's trial counsel was satisfied . . . that the jury had received competent guidance on the legal principles governing the issue of self-defense." *Id.* at 335, and cases cited. See *Commonwealth* v. *Silva*, 401 Mass. 318, 329-330 (1987).

The instructions were flawed in some respects. They contain some disapproved language. The judge, within a very short space, twice told the jury that if they found that "self-defense is present in the case," they must then go on to consider other questions. While "finding" language or its equivalent should be avoided, it is not necessarily fatal. See and compare *Connolly* v. *Commonwealth*, 377 Mass. 527, 535 (1979); *Commonwealth* v. *Richards*, 384 Mass. 396, 404-405 (1981); *Commonwealth* v. *Albert, supra* at 859; *Commonwealth* v. *Lapointe, supra* at 328; *Commonwealth* v. *Vidito, supra* at 338 & n.4. Here, the "finding" language

was closely tied to a correct statement of the burden of proof. Immediately after the second use of the term, the judge stated: "I've indicated the burden is at all times on the Commonwealth." The judge's introduction to the instruction on deadly force — "in order to create a right to defend one's self with a dangerous weapon" — was likewise followed immediately by a correct statement of the burden of proof — "the Commonwealth must prove beyond a reasonable doubt that a defendant used excessive force in either defending himself or another." The defendant also criticizes as burden-shifting the judge's reference to a "precondition" to the "right" of self-defense. It would have been better to avoid this terminology. However, "it is imperative that judges not be left completely tongue-tied when they must explain principles of law essential to the jury's decision." *Commonwealth v. Vidito, supra* at 338. Finally, the judge's statement early in the charge that "[b]efore the issue of self-defense is present in a case, the Commonwealth must prove that a defendant first took advantage of every opportunity to avoid contact" is confused.

Despite some lapses, the charge as a whole conveyed to the jury that the burden remained with the Commonwealth throughout to prove beyond a reasonable doubt that the defendant did not act in self-defense or defense of another. The general charge on burden of proof was thorough and clear. It emphasized that the Commonwealth must prove its case beyond a reasonable doubt and quoted from *Commonwealth v. Webster*, 5 Cush. 295, 320 (1850). Early in the charge on self-defense and defense of another, the judge clearly and forcefully instructed the jury that the burden of proof on this issue remains with the Commonwealth at all times. Her language tracked the language approved in *Commonwealth v. Rodriguez*, 370 Mass. 684, 692 n.10 (1976). See *Commonwealth v. Fluker*, 377 Mass. 123, 129-130 & n.4 (1979). Toward the end of the charge, the judge stated that the burden is on the Commonwealth to prove the use of excessive force beyond a reasonable doubt and then repeated that the burden remains "at all times" on the Commonwealth concerning

self-defense. See *Commonwealth* v. *Albert*, 391 Mass. at 858; *Commonwealth* v. *Lapointe* 402 Mass. at 328; *Commonwealth* v. *Vidito*, 21 Mass. App. Ct. at 335-337 (charge conveyed proper allocation of burden of proof). Contrast *Commonwealth* v. *Collins*, 374 Mass. 596, 600 (1978); *Connolly* v. *Commonwealth*, 377 Mass. at 533-536; *Commonwealth* v. *Rodriguez*, 17 Mass. App. Ct. 547, 551-553 (1984) (charge improperly allocated burden of proof). We reiterate, however, that care must be used in crafting instructions on self-defense and defense of another to "eliminate any language that might convey to the jury the impression that a defendant must prove that he acted in self-defense." *Commonwealth* v. *Vidito, supra* at 339-340.

The defendant's further objections to the instructions on self-defense and defense of another may be dealt with summarily. He objects to the phrase "you will make a determination, based upon the believable evidence, whether or not self-defense is present in the case." It is, however, "appropriate for the judge to 'remind the jurors that they had first to *determine* whether self-defense existed as an issue in this case.' Performing that inquiry requires the jury to evaluate, as a threshold issue, the over-all reasonableness of the force used in the name of self-defense." *Commonwealth* v. *Vidito, supra* at 338. The defendant asserts the judge's statement that "the right of self-defense ordinarily is not present when a person provokes or initiates an assault, unless that person withdraws in good faith from the conflict and announces his intention to retire," gave the impression that the defendant had to prove he was not the aggressor and precluded, as a justification for initiating an assault, the reasonable belief that the victim was reaching for a deadly weapon. The defendant neglects to note that the judge instructed the jury four times that a person may act in self-defense if he "*reasonably believes he is about to be physically attacked* or is about to be physically attacked" (emphasis supplied). The defendant contends that the instructions on self-defense and defense of another were confusing. He also points to an instruction concerning self-defense which does not mention defense of another and con-

tends that the judge thereby precluded the jury from considering whether the defendant acted in defense of another. The judge frequently intermixed her instructions on self-defense and defense of another and sometimes referred to self-defense without mentioning defense of another. She did, however, give specific and clear instructions concerning the elements of defense of another. See *Commonwealth* v. *Martin,* 369 Mass. at 649. At defense counsel's request, she twice repeated those instructions and later reminded the jury that "when I say 'self-defense' I mean defense of another as well." The jury would not have been confused or believed themselves precluded from considering whether the defendant had acted in defense of another. The defendant's contention that the jury should not have been instructed on self-defense because it was not an issue in the case is foreclosed by his request for an instruction on self-defense and his own testimony which indicated that he had fear for his safety during the altercation. The defendant's contention that the judge failed to instruct that "excessive force in the lawful exercise of self-defense or defense of another negates malice" ignores the judge's repeated instructions that the use of excessive force in self-defense may reduce murder to manslaughter. Finally, as the trial judge observed, the jury's request for reinstruction on malice and premeditation indicated a concern with the distinction between first degree murder and second degree murder, not, as the defendant contends, confusion with the concepts of self-defense and defense of another. We conclude that the instructions as a whole do not create a substantial risk of a miscarriage of justice.

(b) *Consciousness of guilt.* The defendant testified that he did not turn himself in to the police until five days after he killed Moran, although he learned that Moran had died and that the police were looking for him after two days. During that time, he stayed first at the home where his girlfriend was babysitting and then at his sister's boyfriend's house. During closing argument, the prosecutor argued that this behavior showed consciousness of guilt. The defendant contends that the unobjected-to instructions on consciousness of guilt

failed to inform the jury that the defendant could not be convicted on the basis of consciousness of guilt evidence alone, as required by *Commonwealth* v. *Toney*, 385 Mass. at 582-585. In this regard, the jury should be instructed "(1) that they are not to convict a defendant on the basis of evidence of flight or concealment alone and (2) that they may, but need not consider such evidence as one of the factors tending to prove the guilt of the defendant" (citation omitted). *Id.* at 585. The charge in this case was nearly identical to the charge in *Commonwealth* v. *Nadworny*, 396 Mass. 342, 371 n.14 (1985), cert. denied, 477 U.S. 904 (1986). In that case, the Supreme Judicial Court held that the instruction on consciousness of guilt, while "not a model of clarity regarding the fact that a defendant may not be convicted on consciousness of guilt evidence alone, . . . contained the substance of what we required in *Toney*." *Id.* at 371. This aspect of the charge created no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Lapointe*, 402 Mass. at 327-328.

The defendant also claims that the instructions "improperly created a mandatory presumption of consciousness of guilt if the jury found that the defendant fled from the scene of the crime and hid to avoid apprehension. . . ." This claim has no merit, as the plain words of the charge make clear: "Under no circumstance, may you presume a defendant's guilt from flight or concealment. . . ."

3. *Sufficiency of the evidence of malice.* The defendant argues that his motion for a required finding of not guilty, made at the close of the Commonwealth's case, was erroneously denied because insufficient evidence of malice was presented to support the second degree murder conviction. Malice, the "requisite mental element" for murder, "includes any unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow." *Commonwealth* v. *Huot*, 380 Mass. 403, 408 (1980). Malice can be inferred from the intentional use of a deadly weapon. *Commonwealth* v. *Campbell*, 375 Mass. 308, 312 (1978). *Commonwealth* v. *Bray*, 19 Mass. App. Ct. 751, 762-763 (1985). The jury could have

found that the defendant intentionally used a deadly weapon. There was testimony of eyewitnesses that he took the bat from a car, walked over to the victim with it, and then swung it at the victim. Evidence was also presented that he "swung the bat really hard" and that he "moved back with the bat, just like you were going to hit a baseball, and hit [Moran] in the head with a really good, hard whack." The evidence, viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), amply supported the jury's inference of malice. See *Commonwealth* v. *Campbell*, *supra* at 312.[10]

The defendant contends that the Commonwealth's case deteriorated between the time the Commonwealth rested and the close of the defendant's case. The defendant did not, however, renew his motion for a required finding of not guilty at the close of all the evidence. See *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 n.1 (1976). The defendant's claim of deterioration relies solely on his trial testimony that he wielded the bat because he feared harm to himself and All, that he was aiming for Moran's shoulder, not his head, and that he did not intend to kill Moran. The defendant admitted at trial that he intentionally swung the bat at Moran. "A jury is not required to believe any or all of a defendant's statements; rather, it may believe only such portions of the statements as it may consider trustworthy." *Commonwealth* v. *Campbell*, *supra* at 313. There was no deterioration of the Commonwealth's case. See *Commonwealth* v. *Amazeen*, 375 Mass. 73, 80 n.5 (1978); *Commonwealth* v. *Ricardo*, 26 Mass. App. Ct. 345, 350-351 (1988). Even if the defendant had renewed his motion, he would not have been successful.

4. *Ineffective assistance of counsel.* The defendant claims that his trial counsel provided ineffective assistance in various respects.

---

[10]The defendant's reliance on *Commonwealth* v. *Johnson*, 3 Mass. App. Ct. 226, 231-233 (1975), is misplaced. In *Commonwealth* v. *McInerney*, 373 Mass. 136, 145-148 (1977), the Supreme Judicial Court declined to follow the allegedly relevant reasoning in that case.

(a) *Failure to request the court to conduct an "adequate colloquy" regarding All's invocation of his Fifth Amendment right to remain silent.* A brief colloquy was held at which All invoked his Fifth Amendment privilege. The court then excused him. The defendant's claim of inadequacy rests on the assumption that All did not have a valid Fifth Amendment privilege and that his testimony would have provided the defendant with a "substantial ground of defence." As we have said, the defendant has not shown that All's invocation of his Fifth Amendment privilege was improper. Neither has he established that All's testimony would have been materially beneficial to the defense. In fact, the defendant has never made any showing as to the contents of All's potential testimony. The defendant has not demonstrated that a more exhaustive colloquy was warranted or that such a colloquy would have provided the defendant with "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. at 96.

(b) *Failure to move for a mistrial and a hearing concerning the Commonwealth's alleged exercise of undue influence over All to prevent him from testifying.* For the reasons we have discussed, the defendant has not demonstrated that by filing such motions, his trial counsel "might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

(c) *Failure to object to errors in the jury instructions on self-defense and defense of another and consciousness of guilt.* We have held that the charge as a whole correctly conveyed to the jury the law of self-defense and defense of another. As to the instruction on consciousness of guilt, we have concluded that it adhered to the substance of the *Toney* requirements and was otherwise correct. The lack of objections did not prejudice the defendant.

(d) *Failure to file motion for required finding.* Finally, the defendant claims ineffective assistance "if this court determines that trial counsel failed to file a proper motion for a required finding of not guilty at the close of the Commonwealth's case and the defendant's case to so much of the in-

dictment as charged murder in the second degree and that the evidence only supported a finding of manslaughter. . . ." The short answer is that, as we have held, ample evidence was presented to permit the jury to find that the defendant killed Moran with malice aforethought. We do not require trial counsel to engage in "exercise[s] in futility." *Commonwealth* v. *Servidori*, 6 Mass. App. Ct. 969, 970 (1979).

The defendant has failed to show that his counsel's behavior fell "measurably below that which might be expected from an ordinary fallible lawyer" and that this behavior "has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian, supra.*

After review of the entire record, we also reject the defendant's final argument that there were errors of law which, although individually insufficient to require reversal, cumulatively "present a substantial risk of a miscarriage of justice." *Commonwealth* v. *Cancel*, 394 Mass. 567, 568 (1985).

> *Judgment affirmed.*
> *Order denying motion for new trial affirmed.*