COMMONWEALTH vs. GEORGE S. DAVIS & another.[1]

Suffolk.    October 20, 1981. — February 10, 1982.

Present: DREBEN, CUTTER, & SMITH, JJ.

*Practice, Criminal,* Discovery, Access to witnesses, Conduct of prosecutor, Voir dire. *Judge.*

On an appeal from convictions of conspiracy there was no merit in the defendants' claim that the Commonwealth had failed to inform them that a witness "had changed his version of crucial events," where it did not appear that the witness's account at trial varied significantly from his grand jury testimony, with which the defendants had been furnished, or that they had been prejudiced by the alleged discrepancies in the information provided to them. [180-183]

A new trial of a criminal case was not required on the basis that the prosecution had improperly induced a witness to refuse to be interviewed by defense counsel where the record supported the judge's finding that the refusal was voluntary and where, in the circumstances, direct access to the witness would not have aided the defense significantly. [183-185]

The prosecution's technical violation of a pretrial discovery order did not require reversal of criminal convictions where the material not furnished to the defendants either was known to them or was inconsequential. [185]

The prosecution was not required to analyze or to assemble discrepancies among the several versions of a witness's proposed testimony, which it had furnished to criminal defendants pursuant to a pretrial discovery order. [185-186]

No merit appeared in the claims of criminal defendants that the prosecution had suppressed certain evidence, where the evidence in question was not shown to exist, or was merely cumulative. [186-187]

At a criminal trial no abuse of discretion appeared in the judge's refusal to order production of certain polygraph tests of a witness. [187]

On an appeal from convictions of conspiracy, no basis existed for the defendants' claim that the trial judge's holding of a voir dire on the question of improper coercion of a witness deprived them of an impartial decision in a subsequent jury waived trial of the indictments. [187-188]

---

[1] Dennis Liakos.

INDICTMENTS found and returned in the Superior Court on October 13, 1977.

The cases were heard by *Garrity, J.,* and motions for a new trial were also heard by him.

*William P. Homans, Jr.,* for George S. Davis.

*Michael B. Roitman,* Assistant Attorney General, for the Commonwealth.

*James F. Sullivan,* for Dennis Liakos, submitted a brief.

DREBEN, J. In these appeals from their convictions and from the denial of their motions for a new trial, the defendants claim numerous errors. They were found guilty after a jury waived trial of participation in conspiracies wilfully and maliciously to cause a dwelling house to be burned and to do so with intent to defraud or injure the insurer. We affirm. The facts will be related as necessary in discussing the defendants' various claims and, where relevant, we shall distinguish between the errors urged at trial and on the motions for a new trial.

1. *Claims for prosecutorial misconduct with respect to Francis Fraine.* George Lincoln, a self-described contract arsonist and the principal witness for the Commonwealth, testified at trial that he had been introduced to the defendant Davis by Francis Fraine, a wiring inspector for the city of Boston; that he had discussed the burning of certain property on Symphony Road in Boston with Davis and Liakos; and that he had set three fires at 37-41-43 Symphony Road, Boston, for Fraine and the defendants Davis and Liakos. Fraine had testified before the grand jury, after having been given statutory immunity, but he was not called as a witness at trial by the Commonwealth. In his grand jury testimony, Fraine testified that he had introduced Lincoln to Davis as a potential purchaser of Davis's Symphony Road property; that he and Lincoln alone had arranged for the burning of the property; and that he, Fraine, had never discussed the burning with either Davis or Liakos. The defendants, through discovery, obtained Fraine's grand jury testimony and called him as a witness for the defense.

1a. *Claims of suppression and late disclosure of exculpatory evidence.* We discuss first the defendants' contentions

(1) that despite specific requests for Fraine's statements to the prosecution,[2] the Commonwealth failed to inform the defendants that Fraine "had changed his version of crucial events" from that given by him to the grand jury and (2) that the prosecution informed the defendants, only after the trial had commenced, that Fraine would "contradict in every material aspect Lincoln's testimony as it pertains to the alleged guilt of these defendants."

A comparison of Fraine's trial and grand jury testimony reveals that his testimony on both occasions was consistent in all material respects. Two differences were shown to be known to the Commonwealth prior to trial, and neither was of any consequence. One was the sequence in which Fraine had introduced four persons (claimed by him to be potential purchasers of the Symphony Road properties) to Davis, and the second was Fraine's assertion to the grand jury that he did not "socialize" with Liakos, while at trial he testified to certain associations with Liakos which could be taken as "socializing."

The defendants do not seriously argue that the difference in testimony as to these two items is significant. They emphasize, however, that Fraine's testimony at trial varied from the grand jury testimony in another respect which, they claim, is important. Both at trial and before the grand jury, Fraine discussed a meeting held at Davis's office. Fraine had brought Lincoln there to introduce him to Liakos so that the latter could represent Lincoln in a criminal motor vehicle matter. When Fraine was asked at the time of the grand jury hearing whether Lincoln had spoken with Davis at that time, he answered, "I believe he just said 'hi'."[3]

---

[2] See *Commonwealth* v. *Wilson*, 381 Mass. 90, 108-109 (1980), for a comparison of the standards applicable to the prosecution's duty to disclose where the request is specific and where there is no request or where the request is general. See also *Commonwealth* v. *Salemme*, 11 Mass. App. Ct. 208, 221-222 (1981).

[3] The rest of Fraine's grand jury testimony concerning this matter was as follows:

"Q.  Did Lincoln go into Davis's inner office?

At trial he testified that Lincoln and Liakos were not present during a conversation between Fraine and Davis, because Lincoln and Liakos were conferring together in another room. He also said at trial that Lincoln at no time told him during that period that he had had a meeting with George Davis. Contrary to the defendants' reading of the transcript, we do not consider Fraine's grand jury testimony (see note 3, *supra*) to be inconsistent with his account at trial. We note that all counsel took the same position at trial. In closing argument each defense counsel stated that Fraine's testimony had remained consistent.[4] More significant, even if the evidence were to be considered inconsistent, this difference does not provide "a substantial basis for claiming materiality." *United States* v. *Agurs*, 427 U.S. 97,

---

A. I believe the four of us were there.
Q. In the inner office?
A. In the inner office. And then he and Dennis stepped outside to discuss the case in Westborough.
Q. Do you know if Davis and Lincoln discussed at that time any matters alone, between the two of them?
A. I have no knowledge of it.
Q. Do you know if Lincoln ever went to Davis's office alone to your own personal knowledge?
A. I have no knowledge of it. No."

[4] The three trial counsel for the defendants were Mr. Robert Barker for Liakos, Mr. William P. Homans, Jr., for DeFuria, who did not appeal, and Mr. Frank J. McGee for Davis.

   a. Mr. Barker: "Mr. Fraine — he didn't waffle on his testimony."
   b. Mr. Homans: "[H]is [Fraine's] story as it had been from day one — his version from day one remained the same."

Mr. Homans had earlier in the trial reached the same conclusion. When asked directly in connection with the defendants' motion to dismiss for prosecutorial misconduct (see part 1b *infra*) whether there had been any discrepancy between what Fraine had said before the grand jury and what he said at trial, Mr. Homans answered no, other than the two matters as to which Fraine had clarified himself. (These were the discrepancies in sequence of the prospective buyers brought to Davis and the activities with Liakos which could be viewed as socializing.)

   c. Mr. McGee: "[M]y view of Fraine is this. From day one, like Mr. Homans said, he told the same story."

106 (1976), quoted in *Commonwealth* v. *Wilson*, 381 Mass. 90, 109 (1980).

Cross-examination of Lincoln by defense counsel was extensive and reflected counsel's full grasp of Fraine's grand jury testimony. Even if counsel had possessed more definite knowledge that there was no opportunity for Davis and Lincoln to meet on the occasion of Lincoln's introduction to Liakos, the defendants have not indicated how they were prejudiced by the prosecutor's alleged lapse. See *Commonwealth* v. *Spann*, 383 Mass. 142, 148-149 (1981). "[B]eyond advancing [this argument, the defendants offer] no indication of how [they] would have restructured [their] cross-examination of [Lincoln] or otherwise altered [their] preparation and presentation so as to take better advantage of the alleged discrepancies." *Commonwealth* v. *St. Germain*, 381 Mass. 256, 263 (1980).

The additional claim that the defendants were prejudiced by the prosecutor's delayed disclosure of the fact that Fraine would contradict Lincoln's testimony in all material respects is also without merit. See *Commonwealth* v. *St. Germain*, *supra* at 263 (the consequences of the delay are what matter). At most, the Commonwealth failed to tell the defendants what they already knew. See *Commonwealth* v. *Wilson*, *supra* at 115. See also *Zeigler* v. *Callahan*, 659 F.2d 254, 265 n.2 (1st Cir. 1981).

1b. *Coercion of Fraine.* The defendants also argue that there was misconduct by the prosecutor consisting of coercion and intimidation of Fraine. At trial, Fraine testified that prior to trial he was threatened by Mr. Wise, a prosecutor, in an effort to induce him to state that there had been meetings between the defendants. After the defendants moved for a mistrial, the judge conducted a very thorough voir dire. He ascertained from counsel for one of the defendants that Fraine did not in fact change his testimony, see note 4, *supra,* and he heard evidence from Mr. Wise and from Fraine's counsel. Although recognizing that Mr. Wise did not believe Fraine and had leaned hard on him, the judge found that he "didn't try to get Fraine to perjure him-

self, didn't put any physical pressure on him." These findings are supported by evidence, including the testimony of Fraine's own counsel. The defendants in their reply brief "do not contest the findings of the trial judge that [Mr.] Wise did not attempt to suborn perjury," nor do they claim that Fraine changed his testimony as a result of Mr. Wise's pressure. They claim, however, that this "coercion," together with the later intimidation by Mr. Delinsky, also a prosecutor, precluded Fraine from talking to defense counsel and warrants reversal.

At the hearing on the defendants' motions for a new trial, counsel for Liakos offered to prove that Mr. Delinsky had threatened to charge Fraine with perjury or to influence the disposition of an Ohio charge against him if he should talk with defense counsel. Both Mr. Delinsky and Fraine's counsel represented to the court that the following conversations occurred. Fraine's counsel called Mr. Delinsky and told him that Fraine was going to speak to defense counsel. Mr. Delinsky was angry and indicated that it was a mistake for Fraine to do that. Within a few minutes, realizing that he had created an improper impression, Mr. Delinsky called back Fraine's counsel and apologized for what had occurred. He explicitly stated that the Commonwealth would not "punish or hurt" Fraine if the latter spoke to defense counsel.

The judge, in denying the defendants' motions for a new trial found, based on Fraine's testimony at trial, that Fraine "refused of his own volition to submit to an interview." There is support in the record for this finding. Moreover, even if the judge's conclusion were erroneous and if, in fact, the combination of Mr. Wise's heavy leaning and Mr. Delinsky's short-lived impropriety had had the effect of inducing Fraine not to speak with defense counsel, a new trial would not be required. Recognizing that "we should be wary of concluding too readily that [the defendants] did not suffer prejudice," we think it plain on this record that "direct access" to Fraine "would have added only negligibly,

if at all, to the defense artillery trained toward trial." *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 659 (1979). See *Commonwealth* v. *Crawford*, 12 Mass. App. Ct. 776, 783 (1981). See also *Commonwealth* v. *Williams*, 6 Mass. App. Ct. 923, 924 (1978). Since the defendants had Fraine's grand jury testimony, see *United States* v. *Jones*, 542 F.2d 186, 210 (4th Cir.), cert. denied, 426 U.S. 922 (1976), "[a]ny prejudice was minimal and any error not a ground for reversal." *Commonwealth* v. *St. Pierre, supra* at 660. Contrary to the defendants' suggestion, the principles of *Commonwealth* v. *Manning*, 373 Mass. 438, 444 (1977), are not here applicable.

2. *Failure to furnish other exculpatory evidence.* 2a. *Insurance file.* The defendants claim that the prosecution violated a pretrial order for discovery of portions of the insurer's file, and they also claim that the file contained exculpatory evidence known to the Commonwealth which should have been disclosed to them prior to trial. We concur in the trial judge's conclusion, made at trial and reiterated in his memorandum denying the motions for a new trial, that the defendants were in no way prejudiced because they already had access to all consequential information through other sources. This conclusion is fully supported by the record.

Examination of the claims of nondisclosure indicates that the material in the insurer's file was either known to the defendants (statements of eyewitnesses, amounts of insurance and payments) or inconsequential (use by Lincoln of gasoline rather than paint thinner). See generally *Commonwealth* v. *Wilson*, 381 Mass. at 107, 115; *Commonwealth* v. *St. Germain*, 381 Mass. at 261 n.7, 263; *Commonwealth* v. *Baldwin*, 385 Mass. 165, 173-174 (1982); *Commonwealth* v. *Lapka, ante* 24, 29-31 (1982). The technical violation, if any, of the discovery order does not warrant reversal. *United States* v. *Agurs*, 427 U.S. at 106.

2b. *Alleged changes as to Lincoln's testimony.* The defendants were provided with several of Lincoln's "impressions" (statements made by him detailing the scope of his

criminal activities), his grand jury testimony and a tape recording. They claim, however, that the prosecution failed to inform them of changes in his proposed testimony, and that as a result they were denied their rights to confront the witness. The defendants have not pointed to any material changes in Lincoln's testimony known to the Commonwealth of which they were unaware. The defense had knowledge of three versions and knew that Lincoln had acknowledged that he had given other stories. While the Commonwealth had a continuing duty to disclose exculpatory evidence, *Commonwealth* v. *Wilson,* 381 Mass. at 109; *Commonwealth* v. *Baldwin,* 385 Mass. at 177; Mass.R. Crim.P. 14a(4), 378 Mass. 875-876 (1979); the Commonwealth was not required to analyze and assemble discrepancies for the defendants. See *Commonwealth* v. *Gilbert,* 377 Mass. 887, 894 (1979); *Commonwealth* v. *Daigle,* 379 Mass. 541, 548 (1980).

2c. *Other alleged suppressions.* The other claims of suppression by the Commonwealth are also unpersuasive. As to some items, the defendants have failed to show that the evidence "actually existed." *Commonwealth* v. *Adrey,* 376 Mass. 747, 753 (1978) (e.g., a statement by George Lincoln indicating his hatred of Liakos, evidence of Lincoln's prior perjury other than what was given to the defendants, statement of one Peter Dowd). As to other items, the defendants have waived their right now to raise this claim, e.g., statements of one Ardolino.

Their contentions that the Commonwealth failed to disclose fully the promises and rewards made to Lincoln are disposed of in *Commonwealth* v. *Zeigler,* 9 Mass. App. Ct. 833, 833-834 (1980); see also *Zeigler* v. *Callahan,* 659 F.2d at 263-264, and by the following statement of the judge in which we concur: "The fact that First Security [the detective agency investigating the arsons] might aid in Lincoln's acquisition of a new identity and his move is merely cumulative. The Commonwealth revealed the gist of the promise with sufficient details thereof to allow the fact

finder to take such inducements into account in determining the witness' credibility."

2d. *Polygraph tests of Lincoln.* The defendants were given the polygraph tests of Lincoln which pertained to the Symphony Road fires but not those relating to other fires. They claim they should have received the other tests as they could have been used to impeach Lincoln's credibility. None of the tests was court-ordered or administered, and the defendants would not have been entitled as of right to introduce these tests. See *Commonwealth* v. *Moore,* 379 Mass. 106, 114 (1979); *Commonwealth* v. *Wilborne,* 382 Mass. 241, 246 (1981). The judge did not abuse his discretion in not ordering the other tests produced.

3. *Alleged uninformed waiver of right to a jury trial.* The defendants argue that the wrongful suppression of exculpatory evidence led them to make an uninformed waiver of their right to a jury trial. Since we have held that the material not divulged was either known to the defendants or inconsequential, this claim is without merit. The waiver was not uninformed and was a decision as to trial strategy. See *Ciummei* v. *Commonwealth,* 378 Mass. 504, 508 n.7 (1979).

4. *Claims of prejudicial bias because of voir dire.* As related earlier, the trial judge conducted a voir dire to determine whether improper coercion of Fraine by Mr. Wise had occurred. Mr. Wise explained his tough examination of Fraine by testifying that he believed Lincoln and not Fraine. The defendants argue that by denying the motions to dismiss on the ground of misconduct by the prosecution, the judge in effect found Fraine to be lying. This, they claim, affected their right to an impartial decision on the indictments. Because the judge failed to send the matter of the voir dire to another judge, the defendants urge he should have recused himself. The short answer to this contention is that this issue is not before us, as the defendants did not at trial request that the judge send the matter to another judge, or object to Mr. Wise's testimony at the voir dire.

In addition, we note that there was other indication that the prosecution did not believe Fraine's version of the events, not the least of which was the failure of the Commonwealth to call Fraine as a witness. Mr. Wise's testimony was not vital or damaging. Contrast *Commonwealth v. Jones*, 362 Mass. 497, 503 n.5 (1972). The judge, in his memorandum denying the defendants' motions for a new trial, properly applied the tests of *Lena* v. *Commonwealth*, 369 Mass. 571, 575 (1976), and expressly disclaimed that he was biased. There is no adequate basis for the claim that the defendants were denied the right to an impartial decision. See *Elder* v. *Commonwealth*, 385 Mass. 128, 134 (1982).

5. *Miscellaneous matters.* Finally, we consider the defendants' claims with respect to three witnesses not heretofore mentioned. The defendants' claim that Loynd's testimony should have been struck is not properly before us, as no motion to strike was made at trial. Silverman's evidence was merely cumulative, and its exclusion was within the discretion of the trial judge. While it would have been proper and perhaps preferable to admit Wade's testimony as to Liakos's interest in finding out about financing for purposes of rehabilitation, the evidence was corroborative, and we think it clear on the record that the defendants suffered no damage by its exclusion.

The defendants' remaining claims are either answered by the trial judge's careful memorandum denying the defendants' motions for a new trial or are so diffuse that they fail to meet the requirements of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

> *Orders denying motions for*
> *a new trial affirmed.*
> *Judgments affirmed.*