COMMONWEALTH *vs.* BRUCE TURNER.

No. 92-P-1693.

Middlesex. November 9, 1993. - October 5, 1994.

Present: ARMSTRONG, DREBEN, & IRELAND, JJ.

*Constitutional Law*, Fair trial. *Practice, Criminal*, Fair trial, New trial, Conduct of prosecutor, Dismissal. *Witness*, Intimidation. *Evidence*, Exculpatory, Relevancy and materiality.

In a criminal proceeding, the prosecutor's threatening of two witnesses, as a result of which the witnesses refused to testify on behalf of the defendant, violated the defendant's due process right under the Sixth and Fourteenth Amendments to the Constitution of the United States to prepare an adequate defense [387-390]; the defendant was entitled to a new trial where the witnesses' testimony would have been material and exculpatory [390].

In the circumstances of a criminal case in which the prosecutor improperly threatened two prospective defense witnesses as a result of which they refused to testify, a new trial rather than dismissal of the indictments was the appropriate remedy. [390-391]

INDICTMENT found and returned in the Superior Court Department on December 19, 1990.

The case was tried before *John J. Forte*, J., sitting under statutory authority, and a motion for a new trial was heard by him.

*Neil F. Colleran* for the defendant.

*Rosemary D. Mellor*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant was convicted by a Superior Court jury of assault and battery by means of a dangerous weapon. G. L. c. 265, 15A.[1] A motion for a new trial was filed and, after an evidentiary hearing, was denied by the trial judge. Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979).

---

[1]Defendant was acquitted on a charge of mayhem. G. L. c. 265, § 14.

The defendant appeals, claiming that his motion for a new trial was improperly denied where his constitutional right to prepare his defense was abridged as a result of threats made by the prosecutor to prospective defense witnesses. We agree.[2]

1. *The facts.* The defendant's conviction arose from the following incident. On August 10, 1990, the defendant and several companions were drinking at a bar, Yesterday's Olde Tyme Tavern, in Everett. At about midnight, the victim, Michael Bolster, and two female companions, Laurie O'Brien and Vicky Ciani, arrived at the bar. The defendant's girlfriend reported to the defendant that the victim made a derogatory remark to her. There was a brawl. The victim was struck with a beer bottle, which seriously cut his face. The defendant admitted at trial that he was present at the bar. He asserted, however, that he did not hit the victim with the bottle.

At trial, Vicky Ciani testified she saw the defendant raise a beer bottle in his hand and crash it over the victim's head. She was the only person to testify to this. None of the other witnesses at trial saw who struck the victim. Two additional witnesses to the incident, Leonard Palmer and Peter Molbeck, both of whom had been sitting with the defendant and his girlfriend in a booth, did not testify. Their anticipated testimony and the behavior of the assistant district attorney were the subject of a motion for a new trial, which is discussed below.

---

[2]The Commonwealth argued that the defendant's appeal should be dismissed because the defendant failed to file a notice of appeal from the denial of his motion for a new trial. A single justice of the Supreme Judicial Court subsequently allowed the filing of a late notice of appeal. See Mass.R.A.P. 14(b), as amended, 378 Mass. 939 (1979).

Because we reverse on the defendant's claim of prosecutorial misconduct resulting in a violation of the defendant's constitutional rights, we do not address the defendant's second claim of error; that he was denied effective assistance of counsel. Moreover, we do not address, and treat as waived, the defendant's contention, brought for the first time on appeal, that his right to a speedy trial, see Mass.R.Crim.P. 36, 378 Mass. 909-914 (1979), was violated. *Commonwealth* v. *Atkinson,* 15 Mass. App. Ct. 200, 205 (1983).

2. *The defendant's right to a fair trial.* At the hearing on the defendant's motion for a new trial, two prospective defense witnesses, who had not appeared at trial, testified to the following.[3] On April 1, 1991, about one month before the trial date, the prosecutor went to the bar for a view. While there, he encountered Palmer and Molbeck. Palmer and Molbeck were prepared to testify at the original trial that the defendant was not the assailant. Each stated that the prosecutor told him, "You better not show up in court," "I'll tear you apart," and "I'll end up putting you away too." Subsequently, Palmer and Molbeck were approached by the defendant's trial counsel, and both refused to testify at trial on behalf of the defendant.[4]

In ruling on the new trial motion, if "the original criminal proceeding was infected with prejudicial constitutional error, the motion judge has no discretion to deny a motion for a new trial." *Commonwealth* v. *Sullivan*, 385 Mass. 497, 503 (1982). The defendant argues that his right to a fair trial was abridged because the prosecutor's misconduct, threatening two witnesses, violated the defendant's due process right under the Sixth and Fourteenth Amendments to the United States Constitution to prepare an adequate defense. See *Webb* v. *Texas*, 409 U.S. 95 (1972). We agree.

The judge, who also presided at the trial, found:

"Even if [he] did make the statement, 'If you show up at trial, I'll tear you apart and I'll end up putting

---

[3]These witnesses also submitted affidavits in support of their allegations against the prosecutor.

[4]Molbeck was originally scheduled to testify for the defendant. At trial, unaware of the prosecutor's threats, the defendant's attorney represented to the court that Molbeck would refuse to testify because of fear of prosecution. Palmer was summonsed to testify for the Commonwealth. On the witness stand, with the advice of independent counsel, Palmer invoked his right under the Fifth Amendment to the United States Constitution not to incriminate himself. The record does not disclose whether Palmer's counsel was aware of the prosecutor's threats at the time of trial. Both the defendant's attorney and the prosecutor who ultimately tried the case (not the prosecutor who had made the threats) were unaware of the threats at the time of trial.

you in jail' (which I am inclined to believe he did make with braggadocio), this was not the reason Palmer and Molbeck refused to testify.

"Palmer refused to testify for the Commonwealth because of advice given to him by court-appointed counsel; Molbeck did not testify because he was not called and because he did not want to be convicted due to his involvement."

Although he labeled the statement "braggadocio," a fair reading of the judge's conclusions is that the statement was in fact made to the prospective witnesses.[5] We disagree with the judge's conclusion that the prosecutor's threats were not the reason the witnesses did not testify. "[I]n light of the great disparity between the posture [of the assistant district attorney who had control over bringing the charges] and that of a witness in these circumstances, the unnecessarily strong terms used by the [district attorney] could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." *Webb* v. *Texas*, 409 U.S. at 98. The judge never considered the link between the threat by the prosecutor and the witnesses' fear of prosecution. That this was not considered by the judge, is made evident by his characterization of Molbeck's testimony as emphasized below.

THE COURT: "You've given two reasons for not testifying. One because you did not want to be convicted because of your involvement, the second *different* reason because of what [the prosecutor] said to you. Now which is the reason for which you did not testify?"

THE WITNESS: "First I was going to. I was a little worried about it but it didn't bother me. But then when

---

[5] See generally *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 657-659 (1979) (State interference with defendant's access to potential witnesses is constitutionally offensive).

he approached me he made me nervous so I decided to back out."

Unquestionably, the witnesses' fear of prosecution is so thoroughly intertwined with the prosecutor's powerful threat of prosecution, that the fear is subsumed into the threat; the fear and the threat are not different, but are, for all practical purposes, indistinguishable.[6] See *United States* v. *Morrison,* 535 F.2d 223 (3d Cir. 1976) (witnesses' refusal to testify, in response to threats from prosecutor of perjury and drug charges, deprived the defendant of his right to present evi-

---

[6]Our conclusion is supported, particularly, by the equivocal testimony of Molbeck at the hearing on the new trial motion. It is evident by his responses that Molbeck did not perceive a difference between those questions asked him by Turner's attorney and those asked by the Assistant District Attorney.

Molbeck testified on direct examination:

Q. "As a result of the statements made to you by . . . the Assistant District Attorney, did you change your mind about testifying on behalf of Bruce Turner?"

A. "Yes."

Q. "Why?"

A. "I didn't want to get implicated, didn't want to go to jail."

Q. "Did you feel threatened or intimidated by the statements made to you — by the statement by [the assistant district attorney]?"

A. "Yes."

Q. "Were you frightened that you would also be indicted if you testified on behalf of Bruce Turner?"

A. "Yes."

On cross-examination, Molbeck testified:

Q. "Were you in fear that in fact you may have had some involvement in this particular matter and that you would be prosecuted for it; is that correct, sir?"

A. "Yes, that's correct."

. . .

Q. ". . . Just so the record is clear, your decision not to testify resulted from your desire not to be prosecuted for whatever involvement you had in this particular incident; isn't that correct?"

A. "That's correct."

Immediately thereafter, on redirect, Molbeck testified:

Q. "Mr. Molbeck, is it your sworn testimony today that it was a result of the threats and intimidating statement made by the Assistant District Attorney to you that resulted in you not testifying on behalf of Bruce Turner; is that correct?"

A. "That's correct?"

dence). We cannot say that the prosecutor's actions did not influence the decisions of the two prospective witnesses not to testify. See *Commonwealth* v. *Colantonio,* 31 Mass. App. Ct. 299, 303 (1991).

In Massachusetts, a defendant must also, in asserting a loss of his right to a fair trial, show prejudice — "that the prosecutor's actions caused a loss of material and favorable testimony." *Ibid.* See *Commonwealth* v. *Snook,* 28 Mass. App. Ct. 955, 959 (1990). See also *United States* v. *Valenzuela-Bernal,* 458 U.S. 858, 867 (1982).[7] The defendant has made an adequate showing that the testimony of the two witnesses would have been favorable to him. Molbeck testified at the hearing on the new trial motion that he physically held the defendant back during the altercation at the bar and heard glass break (inferentially the glass that hurt the victim) at the time he was holding the defendant. The testimony was material and exculpatory. Exculpatory evidence is material if "evaluated in the context of the entire record, [it] creates a reasonable doubt that did not otherwise exist." *Commonwealth* v. *Vieira,* 401 Mass. 828, 832-833 (1988). The jury were entitled to determine the facts from all of the available evidence.

3. *The remedy.* A prosecutor's interference with a witness could, in some instances, be "so threatening that a drastic sanction of dismissal should be imposed, as a warning to other prosecutors, without regard to the witness's actual reaction or to the nature of the testimony the witness might give." *Commonwealth* v. *Snook,* 28 Mass. App. Ct. at 958. See also *Commonwealth* v. *Cronk,* 396 Mass. 194, 198-199 (1985). In the context of a defendant's delayed arraignment,

---

[7] By comparison, in analyzing whether there has been a violation of the defendant's Sixth Amendment right, the First Circuit has applied a four-step analysis that does not require a showing of prejudice. *United States* v. *Hoffman,* 832 F.2d 1299, 1303-1304 (1st Cir. 1987). Thus, "[t]here can be no violation of the defense's right to present evidence . . . unless some contested act or omission (1) can be attributed to the sovereign and (2) causes the loss or erosion of testimony which is both (3) material to the case and (4) favorable to the accused." *Id.* at 1303. "Causation — unlike prejudice — is an integral element of this threshold inquiry." *Id.* at 1302.

the Supreme Judicial Court has mandated a two-part test to determine the propriety of imposing the extreme sanction of dismissal. The test, we think, equally suitable to these circumstances, is whether "[1] a defendant demonstrates actual prejudice to his case *and* [2] misconduct on the part of the Commonwealth which was intentionally undertaken as a means of obtaining a tactical advantage or undertaken with reckless disregard for known risks to the defendant's ability to mount a defense" (emphasis original). *Commonwealth* v. *Perito*, 417 Mass. 674, 681-682 (1994), citing *Commonwealth* v. *Imbruglia*, 377 Mass. 682, 688-691 (1979). The second part of the test is amply fulfilled and requires no additional discussion. Any possible prejudice to the defendant is not irreparable and is adequately cured by retrial. See *Commonwealth* v. *Cronk*, 396 Mass. at 198 ("a showing of irremediable harm to the defendant's opportunity to obtain a fair trial" is ordinarily required). The evidence is not irretrievably lost and is now accessible to the defendant. See *Commonwealth* v. *King*, 400 Mass. 283, 290 (1987) ("[T]he public has a substantial interest in prosecuting those accused of crime and bringing the guilty to justice"). Thus, in this case, particularly given the nature of the testimony at issue, we think that the ultimate sanction of dismissal would be excessive. There should, however, be a new trial, at which the attorneys and the judge, aware that the threats were made, may take adequate measures to offset any damage that may have resulted.

*Judgment reversed.*
*Verdict set aside.*