Commonwealth v. Bachman.

COMMONWEALTH vs. DAVID L. BACHMAN.

No. 95-P-1877.

Middlesex. October 11, 1996. - December 5, 1996.

Present: BROWN, GILLERMAN, & IRELAND, JJ.

*Firearms. Practice, Criminal,* Assistance of counsel, Instructions to jury, Conduct of prosecutor.

At the trial of an indictment alleging forty-four counts of possession of fire-arms, rifles and shotguns in violation of G. L. c. 269, § 10(*a*), where the evidence would not permit the conclusion that the defendant's holding of the weapons was temporary, he was not entitled to the "use" exemption set forth in G. L. c. 140, § 129C(*m*); consequently, on appeal, the defendant did not demonstrate that his trial counsel was ineffective for failing to have asserted the statutory exemption as a defense. [759-762]
On appeal from criminal convictions, assertions of alleged prosecutorial misconduct, made for the first time, provided no basis for reversal of the defendant's convictions. [762-764]

INDICTMENT found and returned in the Superior Court Department on February 24, 1994.

The case was tried before *Patrick J. King, J.*

*W. Theodore Harris, Jr.* (*Barry Pretzel* with him) for the defendant.

*Stephen C. Hoctor,* Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. The principal issue raised by this appeal is whether the failure of the defendant's trial counsel to claim that the defendant was entitled to a statutory exemption (described below) constituted ineffective assistance of counsel that resulted in the defendant's conviction, by a Middlesex jury, of forty-four counts of unlawful possession of firearms, rifles, or shotguns in violation of G. L. c. 269, § 10(*a*).[1]

[1]The defendant was also convicted of one count of possession of ammunition without first obtaining a firearm identification card, see G. L. c. 269,

Because we hold that the statutory exemption was not available to the defendant under the facts presented, we affirm the judgments.[2]

The jury could have found the following facts. On January 30, 1994, Kelly Murray met the defendant at 10 Marie Drive in Wilmington. This was the home of the defendant's mother. The defendant then lived in Haverhill.[3]

Early in the evening of that day, Murray and the defendant went into a small room where the defendant retrieved a duffle bag that was underneath a bed. Murray saw that the bag contained approximately twenty handguns. Later, the two men proceeded to a bedroom which Murray, from past experience, knew to be the defendant's former bedroom. In this room was a gun cabinet containing fifteen to twenty rifles. Another rifle was leaning against the bed's headboard. The defendant, accompanied by Murray, brought that rifle upstairs to the living room where the defendant opened the sliding glass door and fired off several rounds. The defendant's mother, Joan Bachman, was home during these events, but she did not join the men.

Murray was arrested later that night at his house after he had fired off several rounds from a handgun that the defendant had given him. He told the police the events of the evening with the defendant, on the basis of which a search warrant was obtained and executed for 10 Marie Street. The search revealed a small arsenal of weapons and ammunition distributed throughout the house.

The defendant argues that, because he was charged with

§ 10(*h*), and one count of unlawful possession of a silencer, see G. L. c. 269 § 10A. The defendant makes no claim to an exemption from the application of the statutes relating to the possession of ammunition or a silencer.

[2]This appeal brings up the issue of ineffective assistance of trial counsel as matter of law on the record of the trial. There was no need to expand that record for that purpose, and thus the issue did not require a preceding motion for a new trial. See *Commonwealth* v. *Frisino*, 21 Mass. App. Ct. 551, 556 (1986).

[3]Murray testified that, at the time in question, January 30, 1994, the defendant was married and lived in Haverhill; prior to his marriage in early 1993, the defendant resided at 10 Marie Street.

In this court the defendant makes no argument that his residence or place of business was 10 Marie Street, and thus he makes no claim to the first exception to c. 269, § 10(*a*): possession of weapons "(1) . . . in or on [one's] residence or place of business."

violations of G. L. c. 269, § 10(*a*),[4] his trial counsel was ineffective for failing to claim the exemption from § 10(*a*) provided by G. L. c. 140, § 129C(*m*).[5]

1. *Introduction.* General Laws c. 269, § 10(*a*), so far as material to this case, has separate provisions relating to: (1) firearms and (2) rifles and shotguns.[6] Both provisions, by cross reference to G. L. c. 140, § 129C, as described below, incorporate exemptions to the operation of § 10(*a*).[7] Compare *Commonwealth* v. *Jones,* 372 Mass. 403, 405-406 (1977), and *Commonwealth* v. *Wood,* 398 Mass. 135, 137 (1986).[8] The defendant seeks to apply the exemption of § 129C(*m*) to both the firearms indictments and the indictments relating to rifles and shotguns.

2. *The firearms indictments.* The portion of § 10(*a*) that is

---

[4]Section 10(*a*) was amended by St. 1990, c. 511, § 2, effective January 2, 1991.

[5]It should be noted that a statutory exemption to a criminal statute is an affirmative defense. *Commonwealth* v. *David,* 365 Mass. 47, 54 (1974). "Like other such defenses it requires the defendant to satisfy the burden of production of evidence before the Commonwealth must meet its burden of persuasion." *Ibid.* See also *Commonwealth* v. *Tuitt,* 393 Mass. 801, 810 (1985) (the burden is on the defendant to come forward with evidence of a license). It is undisputed that Murray had a valid firearm identification card. See G. L. c. 140, § 129C, discussed below.

[6]The term "firearm" is defined in G. L. c. 140, § 121, as a handgun the barrel of which is less that sixteen inches. A "rifle" is defined, in the same section, as a weapon the barrel of which is more than sixteen inches. A "shotgun" is defined as a weapon that has a smooth bore with a barrel that is more that eighteen inches. The section sets forth other characteristics that distinguish these weapons from each other. Each of the forty-four counts describes an individual handgun, rifle, or shotgun.

[7]The portion of G. L. c. 269, § 10(*a*)(4), concerning firearms speaks of "having complied with *the provisions of*" § 129C, while the portion of § 10(*a*)(5) concerning rifles and shotguns speaks of "having complied with *the requirements imposed by*" § 129C (emphasis added). If there is a distinction to be made between these two subparagraphs, it need not be made in this case, for we decide the issue before us on separate and independent grounds.

[8]These cases predate the 1991 amendment (note 4, *supra*) which, amongst other things, expanded the § 10(*a*) prohibition from "carrying" to "possession." (For a discussion of the amendment, see *Commonwealth* v. *Stratham,* 38 Mass. App. Ct. 582, 583 [1995].)

The Commonwealth's argument that the exemption set forth at G. L. c. 140, § 129C(*m*), cannot be invoked in a prosecution under G. L. c. 269, § 10(*a*), is unpersuasive in light of the amendment of § 10(*a*) from carrying to possession.

pertinent to the firearms charges provides that "[w]hoever, except as provided or exempted by statute, . . . knowingly has in his possession . . . a *firearm* . . . as defined in [c. 140, § 121] without . . . (4) having complied with the provisions of section[] one hundred and twenty-nine C . . . of chapter one hundred and forty . . . shall be punished . . . " (emphasis added).

General Laws c. 140, § 129C, as appearing in St. 1973, c. 892, § 3, states that "[n]o person, other than . . . an exempt person . . . shall own or possess any firearm . . . unless he has been issued a firearm identification card" pursuant to § 129B. Section 129C enumerates sixteen "persons and uses" that are exempt from the provisions of § 129C, including subparagraph (*m*), upon which the defendant relies.

The "use" exemption provided by the firearms portion of subparagraph (*m*), as amended by St. 1969, c. 799, § 8, states, "[t]he temporary holding, handling or firing of a firearm for examination, trial or instruction in the presence of a *holder of a license to carry* firearms . . ." (emphasis added). The procedure for obtaining a license to carry a firearm and the conditions of its issuance are set forth in G. L. c. 140, § 131. A § 131 license is distinct from a firearm identification card which is described in G. L. c. 140 § 129B; under G. L. c. 140, § 129C, a firearm identification card is required of every person, not exempt, who "own[s] or possess[es] any firearm, rifle, shotgun or ammunition . . . ."[9]

The defendant relies on the fact that Murray was issued a firearm identification card to support his claim of exemption under the firearms charges. That fact has no legal significance in the context of a charge of unlawful possession of a firearm. Further, there was no evidence at the trial,[10] and the defendant does not now assert (nor did he in any motion for a new

---

[9]Section 129C, as amended by St. 1984, c. 172, also provides that the possession of a firearm identification card issued under § 129B "shall not entitle any person to carry a firearm in violation of" G. L. 269, § 10.

[10]One of the officers involved in executing the search warrant was asked whether he knew that the defendant's mother had a "current FID card[.]" The officer answered, "I had knowledge that she had a license to carry." It is unclear whether the officer believed he was responding to the question or volunteering new information. Later in the trial, a question from the jury revealed that they seemed to be under the impression that the defendant's mother had "an FID card," and the judge, in his response to the question, referred to the defendant's mother having a firearm identification card, not

trial), that Murray had a license to carry a firearm issued under § 131. Thus, the relevant exemption of subparagraph (*m*) pertaining to firearms, had it been asserted, would have availed the defendant nothing because the defendant would not have been able to establish his entitlement to the exemption.[11]

3. *The rifle and shotgun charges.* Section 10(*a*) also provides "whoever knowingly has in his possession . . . *a rifle or shotgun* . . . without . . . (5) having complied with the requirements imposed by section one hundred and twenty-nine C of chapter one hundred and forty upon ownership or possession of rifles and shotguns . . . shall be punished . . ." (emphasis added).

The "use" exemption provided by the portion of subparagraph (*m*) in § 129C pertaining to rifles and shotguns states: "the temporary holding, handling or firing of a rifle or shotgun for examination, trial or instruction in the presence of a holder of a firearm identification card . . . ." While the defendant was holding, handling, and firing rifles or shotguns in the presence of Murray, who was the holder of a firearm identification card, the defendant does not argue, and the evidence at the trial would not permit the conclusion that the defendant's holding of the weapons was merely temporary, or that the defendant's holding of the weapons was only for the purpose of examination, trial, or instruction. To the contrary, the inference was strong and obvious that the defendant was displaying the stash of weapons to Murray as the arsenal in the possession of and belonging to the defendant. In fact, he gave one handgun to Murray to take home with him, retaining all the other weapons at 10 Marie Street following Murray's departure. The defendant makes no argument that there was insufficient evidence for the jury to find that the defendant did "knowingly ha[ve weapons] in his possession" as charged in the indictments. The evidence was sufficient for the jury so to find.

---

a license to carry. The defendant's claim to the exemption of § 129C(*m*) is unavailable on the ground that his mother had a license because, in any event, the holding was not "temporary" and was not "for examination, trial or instruction."

[11]Additionally, as discussed in the next section, there was no showing that the defendant's possession of any weapon was "temporary" or "for examination, trial or instruction," so as to bring it within the exemption of G. L. c. 140, § 129(*m*).

We conclude that the exemption provided by § 129C(*m*) was not available to the defendant regarding his possession of firearms, rifles, and shotguns. Accordingly, there was no ineffective assistance of trial counsel.

4. *The jury instructions.* The second point raised by the defendant has to do with the judge's instruction to the jury regarding references in the evidence to a "firearm identification card and license." The judge instructed the jury that they were to disregard such references because there was no evidence that the defendant had either one. Essentially the same subject was addressed in the judge's answer to a question from the jury regarding the possibility that the defendant's mother had a firearm identification card. The jury inquired whether that would protect the defendant. The judge replied that, assuming the defendant's mother had a firearm identification card, it would entitle her to possess the weapons at her residence, but "it would only apply to her. It would not apply to other persons." There was no objection to this instruction.

The judge's instructions were correct — at least insofar as the jury were told that a firearm identification card issued to the defendant's mother would permit her to possess weapons in her residence. See G. L. c. 269, § 10(*a*)(1). However, the "use" exemption of subparagraph (*m*) in § 129C permits the temporary holding of a rifle or shotgun for examination, trial, or instruction in the presence of a holder of a firearm identification card. Thus the judge was not entirely correct when he instructed the jury simply to disregard all references to a firearm identification card issued to a person other than the defendant. Nevertheless there was no substantial risk of a miscarriage of justice because, as we have said, the evidence would not support a finding that the defendant was holding the numerous rifles and shotguns temporarily for the purpose of examination, trial, or instruction.

5. *Alleged prosecutorial misconduct.* Finally, the defendant argues, for the first time in this court, that the convictions should be reversed for reason of prosecutorial misconduct.

The jury rendered their verdicts on October 6, 1994. The judge had denied the defendant's motion for required findings of not guilty at the close of all the evidence. That motion asserted only the insufficiency of the evidence. At the argument on sentencing, trial counsel for the defendant, referring to the

issue of the ownership of the weapons, told the court that counsel was prevented by the defendant from putting on witnesses who would "state who owned those guns for fear that the mother would be attributed with some of the other things and then charged." She made no mention of any alleged prosecutorial misconduct and she did not state that the fear of which she spoke could be attributed to any unlawful threats made by the assistant district attorney.

On February 6, 1996, newly appointed counsel (who is also counsel for the defendant in this court) filed a motion for a required finding of not guilty in which he requested that required findings of not guilty be entered on all the firearms and ammunition indictments and a new trial be granted on the remaining indictments. Neither the motion nor the brief filed in support of the motion made mention of any prosecutorial misconduct. The only ground of the motion was the exemption provided by § 129C(m). We were informed by defendant's counsel following the argument that the motion was denied on June 17, 1996. No appeal was taken from the denial of the motion. In this court, the defendant sought to expand the record by including both the unsigned affidavit of trial counsel,[12] and the signed affidavit of appellate counsel. That motion was denied. In her unsigned affidavit, which is included in the record appendix despite the denial of the motion, trial counsel appears to state, for the first time in more than one year following the trial, that the assistant district attorney, on the first day of trial,[13] told her, "You put that mother on the stand and I'll go after her."

In his brief to this court, the defendant relies on the statement of trial counsel during her argument on sentencing which we have previously quoted. The defendant then adds that that account of "the prosecutor's threat was substantially the same as stated in trial counsel's [unsigned] affidavit." Assuming that the point of alleged prosecutorial misconduct was preserved for this direct appeal, we disagree. Counsel's argument at sentencing made no reference to threats made by the assistant district attorney and provides no basis for the claim of prosecutorial misconduct. *Commonwealth* v. *Turner*,

---

[12]The defendant's brief makes clear that trial counsel never signed the affidavit that appellate counsel had prepared.

[13]This date is established by the affidavit filed by appellate counsel who, according to his affidavit, talked with trial counsel.

37 Mass. App. Ct. 385, 387 (1994), upon which the defendant relies, is inapposite. There two prospective defense witnesses testified at the hearing on a motion for a new trial. "Each stated that the prosecutor told him, 'You better not show up in court,' 'I'll tear you apart, and I'll end up putting you away too.' " *Ibid.*

What is alleged to be trial counsel's belated and sinister interpretation of some event which, when it occurred, she found innocuous, hardly provides the occasion for relief from the defendant's convictions.

*Judgments affirmed.*